144

The State, ex rel. Portage County Welfare Dept. et al., Appellees, *v.* Summers, Judge, Appellant.

(No. 73-290—Decided May 8, 1974.)

146

*Mr. Ralph J. Stemberger,* for appellees.
*Mr. Harry L. Griffith* and *Mr. Richard C. Lombardi,* for appellant.

WILLIAM B. BROWN, J. The question presented in this case is whether a "certified organization," as defined in R. C. 3107.01(C), by its failure to consent to an adoption, can deprive the Probate Court of jurisdiction over an adoption proceeding.

The granting of a writ of prohibition is not warranted unless it is shown that the imminent exercise of judicial power amounts to an *unauthorized usurpation* of judicial power. *State, ex rel. Northern Ohio Telephone Co.*, v. *Winter* (1970), 23 Ohio St. 2d 6, 8.

Thus, our threshold inquiry herein is directed to ascertaining the authority of a Probate Court to exercise judicial power in adoption proceedings.

Section 1, Article IV of the Ohio Constitution, reads:

"The judicial power of the state is vested in a Supreme Court, Courts of Appeals, Courts of Common Pleas, and such other courts inferior to the Supreme Court as may from time to time be established by law."

Section 4, Article IV of the Ohio Constitution, reads:

"(A) There shall be a Court of Common Pleas in each county of the state * * *.

"(B) The Courts of Common Pleas shall have such original jurisdiction over all justiciable matters * * * as may be provided by law.

"(C) Unless otherwise provided by law, there shall be a Probate Division of the Courts of Common Pleas * * *."

Exclusive jurisdiction over adoption proceedings is vested in the Probate Court. *In re Adoption of Biddle* (1958), 168 Ohio St. 209.

R. C. 2101.24, in pertinent part, provides:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, *unless the power is expressly otherwise limited or denied by statute.*" (Emphasis ours.)

The portion of R. C. 2101.24, emphasized above, would appear to divest the Probate Court of its power to exercise original and exclusive jurisdiction over adoption pro-

150

ceedings to the extent that other statutes purport to expressly limit or deny the power. The Court of Appeals, in its opinion, concluded that the provisions of R. C. 3107.06 (D), requiring agency approval of an adoption, constituted a statutory denial of power to the Probate Court to enter an interlocutory order or to proceed further in the adoption proceeding.

R. C. 3107.06, in pertinent part, provides:

"No final decree or interlocutory order of adoption shall be entered by the Probate Court unless there is filed with the court written consents to the adoption, verified or acknowledged by the following:

"* * *

"(D) By any department, county department or board, certified organization, or a person or persons having the permanent custody of the child. * * *"

The statute is mandatory, and the clarity of its language permits no construction. *Schario* v. *State* (1922), 105 Ohio St. 535, 537. However, in our opinion, the inquiry must proceed beyond that determination.

Section 1, Article IV of the Ohio Constitution, *supra,* vests judicial power in the courts of this state. Therefore, the crucial question is whether the process of adopting a child falls within the ambit of subject matter properly relegated to the exercise of judicial power.

Adoption is a function of the state which necessitates the exercise of power in determining the proper custody of a child. Thus, the question is whether that power is judicial power, to be exercised exclusively by the courts of this state. In *State, ex rel.,* v. *Guilbert* (1897), 56 Ohio St. 575, 626, this court said:

"The functions of the state are governmental only. Its powers are embraced within the three familiar divisions of legislative, judicial and executive. He who affirms the existence of the power in question must be able to find it embraced in one of these divisions. * * *

"* * *

"It is true that the power to ascertain and decide is

not necessarily a judicial power, and it is frequently exer-, cised by ministerial officers and legislative bodies. Whether the power to hear and determine is judicial depends upon the nature of the subject of the inquiry, the parties to be affected and the effect of the determination. While it is not supposed that any definition of judicial power, sufficient for all conceivable cases, has ever been attempted, it is clear that 'to adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department.' * * *"

In, *In re Adoption of Biddle, supra* (168 Ohio St. 209), at 214, this court recognized that "* * * adoption * * * embraces not only custody and support but also descent and inheritance and in fact every legal right with respect to the child."

In addition, *In re Haun* (1971), 31 Ohio Misc. 9, *affirmed,* 31 Ohio App. 2d 63, states: "Since the early days of this state the adoption process has inhered in the courts of the state which are rightfully regarded by the people as the ultimate repositories of justice * * *. Adoption proceedings are highly personal and frequently involve property interests, and it is in our courts that personal liberties and property rights are vindicated and adjudicated * * *. It is the spirit of the law to maintain the paramount authority of the courts in the protection of private rights."

Accordingly, we hold that adoption is a function which requires the exercise of the judicial power which is constitutionally vested in the courts of this state, and that original and exclusive jurisdiction over adoption proceedings is vested specifically in the Probate Court pursuant to R. C. Chapter 3107.

Matters of adoption are of such compelling public interest that any statutory incroachment upon the power of the courts to exercise the discretion granted them by statutory and constitutional provisions must be carefully scrutinized.

The effect of R. C. 3107.06(D) is not, as appellees

contend, to make those agencies enumerated therein the final arbiters in adoption proceedings when agency approval is withheld, thereby depriving the court of its statutory and constitutional authority to hear and determine adoption matters.

We conclude that such deprivation of authority would not only be anomalous but would constitute an impermissible invasion of the Probate Court's power to act in areas in which the court is specifically vested by statute with authority to perform its judicial power granted by the Constitution. Therefore, R. C. 3107.06(D) may not operate to divest the Probate Court of its necessary judicial power to fully hear and determine an adoption proceeding. To hold otherwise would leave the fate of the adoptive child to agency whim or caprice without having the agency's reasons for denying consent adjudicated.

Therefore, the refusal of consent to an adoption by a "certified organization," as defined in R. C. 3107.01(C), does not impair the jurisdiction of the Probate Court, but the recommendations and the reports, filed pursuant to R. C. 3107.05 and 3107.10, are to be considered, in conjunction with all other evidence adduced in the proceeding, by the court in deciding the issues presented by R. C. 3107.-09[7], viz (1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption.

Historically, it has been the province of the courts to make the final determination of the best interests[8] of a

---

[7]R. C. 3107.09, in pertinent part, provides:

"If after hearing, the court is satisfied that Sections 3107.01 to 3107.14, inclusive, of the Revised Code, have been complied with, that the petitioner is suitably qualified to care for and rear the child, and that the best interests of the child will be promoted by the adoption, it shall enter an interlocutory order of adoption declaring that, subject to the final decree of the court, the child shall have the status of adopted child of the petitioner. Property rights shall not be affected by such interlocutory order."

[8]"Best interest of the child" doctrine described by Sanford N. Katz in 64 Mich. L. Rev. 756, 763 (1966), as: "We say that we expect child-

child in custody disputes. In an early case involving a custody dispute between the father and mother of a child, *Gishwiler* v. *Dodez* (1855), 4 Ohio St. 615, 617, this court said:

"* * * it is universally agreed that neither of the parties has any rights that can be made to conflict with the welfare of the child, and that the order of the court should be made with a single reference to its best interests. The contending parties may be fairly presumed to be more solicitous to gratify their own interests and feelings, than to develop the whole truth, with a view to the main object of the inquiry; while the child, incapable of judging for itself, and wholly unrepresented in the contest, is in danger of being overlooked. Under such circumstances, it is the duty of the judge to become its protector, and not only to listen to all the evidence produced by the parties calculated to throw light upon his path of duty, but also to inform himself from all other legitimate sources, the better to qualify himself to discharge understandingly the delicate trust."

In *In re Adoption of Kure* (1936), 197 Minn. 234, 266 N. W. 746, the Supreme Court of Minnesota was faced with similar facts and the same question as presented herein. In holding that the consent of the agency is not necessary to confer jurisdiction upon the court, the court said, at page 237:

"In furtherance of its design to protect the dependent child's welfare, the Legislature provided for the consent of the board or person having control of the child to its adoption. But it is readily apparent that this consent is not the same right as that exercised by the parents. * * * The consent of those in custody of the child is simply an

ren to be physically and emotionally secure; to become economically independent; to acquire an education and develop skills; to respect people of different races, religions, and national, social and economic backgrounds; to become socially responsible and honorable, and to have a sense of family loyalty." See S. Katz, When Parents Fail xv, note 2 (1971).

154

additional safeguard to the child's welfare. With the child under the control of the state as it is, when in the custody of the state board or a guardian, its welfare is the state's paramount object.

"The reasons for requiring the consent of the guardian are set out in *In Re Mair*, 184 Minn. 29, 237 N. W. 596. It was there said that it might well be argued that those reasons do not apply to the board of control. May that board withhold its consent and thereby defeat the petition when the best interests of the child compel a court to find that failure to grant the petition would be inimical to the best interests of the child? We think it cannot so defeat the manifest purpose of the law. When we consider all of the manifold provisions of the Juvenile Court Act together with the adoption statute we find none of the reasons applicable to parents or to guardians to be persuasive as to the board. Jurisdiction is complete in the court, and it may proceed with the sole view to the best interests of the child. * * * ''

The above quoted language from *In re Adoption of Kure* also serves to distinguish the case of *In re Ramsey* (1956), 164 Ohio St. 567, wherein this court held that written consent to the adoption by the living *mother* of the child is a necessary condition precedent to the issuance of a final decree or interlocutory order of adoption. We are here concerned with the necessity for *agency* consent; the question of *parental* consent is not presented by the facts of this case.

Permanent placement in a judicially approved home environment through the process of adoption is clearly preferable to confining the child in an institution or relegating the child to a life of transience, from one foster home to another, until such time as the certified organization determines that it is proper to give its consent to an adoption.

We conclude that appellant was properly exercising his jurisdiction over the subject adoption proceeding, and

accordingly, the issuance of a writ of prohibition by the Court of Appeals was unwarranted. The judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed.*

O'NEILL, C. J., CORRIGAN, CELEBREZZE and P. BROWN, JJ., concur.

HERBERT and STERN, JJ., concur in paragraphs one, two and four of the syllabus and in the judgment.

HERBERT, J., concurring in paragraphs one, two and four of the syllabus, and in the judgment.

I agree with the majority that R. C. 3107.06(D), as it is now constituted, "does not impair the jurisdiction of the Probate Court." However, I am not convinced of the correctness of the majority's conclusion that the General Assembly is without the power to so impair that jurisdiction. Were proper standards legislatively established for the granting or withholding of agency consent, it would seem that, constitutionally, the General Assembly could indeed name such consent as a prerequisite to the granting of a final or interlocutory order of adoption. Section 4 of Article IV, Constitution of Ohio.

I would have also preferred that the majority opinion point out our recognition of the critically important passage of approximately two years since Antoinette has been living with the Averys. Appellate courts, including this one, should be concerned with the passage of many months in custody and adoption cases involving very young children. Busy as we are with settling questions of law, immense harm can be done to such children by moving them from "parents" to "parents" after they have formed deep and lasting bonds of trust and affection in one household or another. Hence, in the case at bar, I would

require that the best interests of this little girl be carefully reexamined by the trial court, in light of the passage of time since its original finding. As we have determined, that court was correct in its jurisdictional decision of December 1972. But I do not take our announcement today to mean that that judgment either must or should now be carried out, irrespective of what is currently in Antoinette's best interests.

STERN, J., concurs in the foregoing concurring opinion.