IN RE HARSHEY.

[Cite as In re Harshey (1974), 40 Ohio App. 2d 157.]

158

(No. 33352—Decided July 5, 1974.)

*Mr. Arthur L. Cain,* for appellant.
*Mr. Charles Cohen,* for appellee.

JACKSON, J. This is an appeal from a judgment of the Probate Court of Cuyahoga County dismissing appellant's petition for the adoption of Gary Harshey.

The child who appellants seek to adopt, Gary Elledge, was born out of wedlock on May 6, 1971. When Gary Elledge was five weeks old, his mother placed him in the home of Mr. and Mrs. Alex Kocsis. Mrs. Alex Kocsis is an independent licensed foster mother. Mr. and Mrs. Kocsis had already been granted custody of Gary's older half-brother, Nick Elledge, whom they adopted on February 18, 1972.

In March of 1973, Mr. and Mrs. Kocsis indicated to a social worker of the Cuyahoga County Welfare Department that they wanted to adopt Nick's brother, Gary. Mrs. Kocsis later discovered that she was pregnant with twins and did not think that she would be able to care for Gary. Mrs. Kocsis was aware that the Harsheys, her distant relatives, were interested in adopting a child, and informed them that Gary was available for adoption.

On February 1, 1973, Mr. and Mrs. Harshey, the appellants, applied to Cuyahoga County Welfare Department to adopt "a child."

Mrs. Kocsis subsequently permitted the Harsheys to have custody of Gary Elledge for limited intervals of time, including five days in April, when Mrs. Kocsis was in the hospital having twins, and several subsequent weekends.

In late spring or early summer of 1973, Gary's mother, Shirley Elledge, came to Cuyahoga County Probate Court to sign an adoption consent, thinking that Mr. and Mrs. Kocsis were going to adopt Gary. Upon learning from the referee of the adoption department that someone other than Mr. and Mrs. Kocsis planned to adopt Gary, the mother refused to consent.

The Harsheys persisted in their efforts to adopt Gary. A social worker of the Cuyahoga County Welfare Department was assigned to the case and held joint and separate meetings with the Harsheys in late June and early July, 1973.

On July 23, 1973, Gary Elledge was committed by order of Juvenile Court, to the temporary care and custody of the Cuyahoga County Welfare Department, pending a hearing on August 24, 1973. On July 23rd or 24th, Gary was taken out of the Kocsis' home and placed in a county agency foster home, where he was residing at the time of this appeal.

On August 9, 1973, the appellants filed a petition for the adoption of Gary Harshey.[1]

On August 24, 1973, upon finding that Gary Elledge was a neglected child, the Juvenile Court of Cuyahoga County committed him to the permanent care and custody of the Cuyahoga County Welfare Department for the purpose of adoption.

Appellant's amended petition to adopt Gary Harshey was filed on September 28, 1973. Appellees, the Cuyahoga County Welfare Department, Social Service Division, filed a motion to dismiss appellant's petition to adopt Gary Harshey. A hearing on this motion was held in Probate

---

[1]Pursuant to R. C. 3107.03 (D), Gary Elledge must be referred to in the petition for adoption as Gary Harshey, the name by which he would be known were the petition granted.

Court on November 30, 1973. The findings of fact and conclusions of law by the Probate Court, which ordered the dismissal of appellant's petition and amended petition to adopt Gary Harshey, was filed on December 28, 1973. The Harsheys appeal, and assign the following three errors:

"1. The Probate Court erred in dismissing the petition and amended petition for the adoption of Gary Harshey.

"2. The Probate Court erred in refusing to hear evidence on the merits of the petition and amended petition for the adoption of Gary Harshey.

"3. The Probate Court erred in quashing the subpoena duces tecum issued by the Appellants, directed to Appellee Cuyahoga County Welfare Department Social Services."

Appellant's three assignments of error are interdependent, and are therefore considered and ruled upon together.

Adoption proceedings are controlled by statute. The relevant statutes provide, in pertinent part:

R. C. 3107.06:

"No final decree or interlocutory order of adoption shall be entered by the probate court unless there is filed with the court written consents to the adoption, verified or acknowledged by the following:"

"(B) By each of the living parents, adult or minor, except as follows:

"(1) The mother of an illegitimate child shall be considered for the purpose of this section the sole parent and may give consent alone, in which case the consent shall state that it is given by the mother as the sole parent. . . ."

"(2) The consent of a parent shall not be required if the child is in the permanent custody of the department of public welfare, a county welfare department, a county children services board, a certified organization, or a person or persons to whom permanent custody of the child has been given by a committing court having jurisdiction over said child. . . . "

"(D) By any department, county department or board, certified organization, or a person or persons having the permanent custody of the child. This provision applies to

custodians in a foreign state or country, provided that the division has certified in writing to the probate court that such agency, person, or persons have authority to accept permanent custody of children and place such children for adoption under the laws of such foreign state or country.''

At the time that appellants filed their first petition for the adoption of Gary Harshey (Elledge) on August 9, 1973, his permanent care and custody had not yet been entrusted to the Cuyahoga County Welfare Department. Consent of Gary's natural mother was a statutory prerequisite to a final or interlocutory order of adoption at this time. R. C. 3107.06(B)(1). Strict statutory compliance with the parental consent requirements of the adoption code is required because a decree of adoption in such a situation divests a parent of all legal rights and obligations due from the child and the child is released from all legal obligations of obedience or otherwise to the parent. *In re Ramsey* (1956), 164 Ohio St. 567, 571. Indeed, consent of parents still entrusted with the permanent care and custody of their natural children is necessary to a give a court jurisdiction to render a decree of adoption. *In re Ramsey, supra,* at 571; *In re Martin* (Cuy. Cty. C. A. 1957), 76 Ohio Law Abs. 219. Because Gary Elledge's mother had not given her consent the Probate Court properly dismissed appellant's original petition for adoption.

At the time appellants filed their amended petition for adoption of Gary Harshey, on September 28, 1973, permanent care and custody of the child had been entrusted to the Cuyahoga County Welfare Department by order of Juvenile Court.

R. C. 3107.06(D)(1) lists the consent of an agency having permanent custody of a child as a prerequisite to a final decree or interlocutory order of adoption. However, the Ohio Supreme Court has recently held that:

''The refusal of consent to an adoption by a 'certified organization,' as defined in R. C. 3107.01(C), does not impair the jurisdiction of the Probate Court, but the recommendations and the reports, filed pursuant to R. C. 3107.05 and 3107.10, are to be considered, in conjunction with all

other evidence adduced in the proceeding, by the court in deciding the issues presented by R. C. 3107.09, viz (1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption." *State, ex rel. Portage County Welfare Dept.,* v. *Summers* (1974), 38 Ohio St. 2d 144 (Syl. 4).

In so holding, the Ohio Supreme Court created a clear distinction between *agency* consent and *parental* consent. The rationale for this distinction is that the adoption of a child whose custody has been entrusted to an agency for the purpose of adoption does not involve the serious consequences of severing the natural parent to child relationship. *Cf. In re Ramsey, supra.* Unlike parental consent, agency consent is simply an additional safeguard to the child's welfare. *State, ex rel. Portage County Welfare Dept.,* v. *Summers, supra,* at 154, quoting with approval *In re Adoption of Kure* (1936), 197 Minn. 234, 266 N. W. 746. Thus, while natural parents entrusted with the permanent custody of their children may deprive a probate court of jurisdiction to enter a decree of adoption by withholding their consent to the adoption, the refusal of a consent to an adoption by a "certified organization," as defined in R. C. 3107.01(C) does not impair the jurisdiction of the probate court to fully hear and determine an adoption proceeding. *State, ex rel. Portage County Welfare Dept.,* v. *Summers, supra; In re Haun* (Cuy. Cty. 1971), 31 Ohio App. 2d 63.

Upon finding *inter alia,* that no written consent to the adoption had been filed by the Cuyahoga County Welfare Department, the Probate Court dismissed appellants' amended petition for adoption, which was filed subsequent to the granting of permanent custody to the Welfare Department ". . . without a hearing on the suitability of Mr. and Mrs. William J. Harshey to adopt Gary. . . .'"[2] The dismissal of this amended petition without a hearing on the merits was erroneous.

---

[2] Preface to Probate Court's specific findings of fact and conclusions of law.

In a final attempt to prevent a hearing on the merits, appellees assert that the Probate Court properly dismissed the Harshey's amended petition to adopt because the petitioners failed to comply with the requirements contained in the third paragraph of R. C. 5103.16, the pertinent portion of which reads as follows:

"No child shall be placed or received for adoption or with intent to adopt *except* through a placement made by a county welfare department having a child welfare division, county children services board, the department of public welfare, an organization authorized to place children for adoption under a certificate of the department of of public welfare, or custodians in a foreign state or country, . . . unless prior to such placement and receiving of the child the parent or parents of the child have personally applied to, and appeared before, the probate court of the county in which such parent or parents reside or in which the person or persons seeking to adopt said child reside for approval of the proposed placement specified in such application, and unless said court, after an independent investigation of the proposed placement has determined that it is in the best interests of the child and has approved of record the proposed placement. . . ." (Emphasis added.)

Appellees contend that this portion of R. C. 5103.16 requires the appellants to make an application to Probate Court, in addition to their petition to adopt, duly filed in accordance with R. C. 3107.03.

Appellees have totally misread R. C. 5103.16. This section is intended to provide a measure of judicial control over so-called "independent" placements for adoption, not conducted under the aegis of an authorized agency such as the county welfare department. The quoted section of R. C. 5103.16 provides this measure of control by requiring that the parents of a child desiring to make such an independent placement for adoption personally apply to and appear before the proper probate court for approval of the placement. *Cf. In re McTaggart* (1965), 4 Ohio App. 2d. 359.

R. C. 5103.16 does not require, as appellees contend, that the prospective adoptive parents make an applica-

tion to probate court for approval of placement. Further, R. C. 5103.16 has no application to the case at bar, which does not involve a proposed "independent or non agency" placement of a child for adoption.

In their third assignment of error, appellants state that the lower court erred in quashing their subpoena duces tecum directed to appellees. The record before this court does not reveal that such a subpoena was ever requested or what documents appellants sought to have produced by the subpoena. The Probate Court did, in an entry journalized on August 9, 1973, appoint a next friend of Gary Elledge to submit a full report, in writing, approving or disapproving the proposed adoption of young Gary. Such an investigation is required by R. C. 3107.05. This statute requires that the investigation include inquiries as to:

"(A) The physical and mental health, emotional stability, and personal integrity of the petitioner and the ability of the petitioner to promote the welfare of the child;

"(B) The physical and mental condition of the child;

"(C) The child's family background, including names and identifying data regarding the parents;

"(D) The reasons for the child's placement away from his parents, their attitude toward the proposed adoption, and the circumstances under which the child came into the home of the petitioner;

"(E) The suitability of the adoption of the child by the petitioner, taking into account their respective racial, religious, and cultural backgrounds, and the child's own attitude toward the adoption in any case in which the child's age makes this feasible."

The statute safeguards the confidentiality of certain portions of this investigative report by stating that: "[t]he reports of the investigation required by divisions (B), (C) and (D) of this section shall not be filed with the other papers in the adoption proceedings, but shall be filed separately and shall be available for inspection only upon the personal direction of the probate judge." We interpret this clause to mean that the reports filed pursuant to subsection (A) and (E) of R. C. 3107.05 shall be readily

available to those who have petitioned for adoption, while the reports filed pursuant to subsections (B), (C) and (D), of this statute may be withheld from petitioners at the discretion of the probate judge.

Accordingly, the decision of the Probate Court is reversed, and the cause remanded for a full hearing on the petition for adoption, to be conducted in accordance with R. C. 3107.09 and this opinion.

*Judgment reversed.*

KRENZLER, P. J., and MANOS, J., concur.

KRENZLER, J., concurring. I concur in the judgment of reversal. The Probate Court committed prejudicial error in dismissing the amended petition for the adoption of Gary Harshey for lack of jurisdiction. The Probate Court did have jurisdiction of the amended petition for adoption.

R. C. 5103.16 does not require that a child in the permanent custody of the Cuyahoga County Welfare Department be placed in a proposed adoptive home prior to a petition for adoption being filed. The fact that a child is not placed in such a home with the consent of the Cuyahoga County Welfare Department does not deprive the Probate Court of jurisdiction in adoption proceedings under R. C. Chapter 3107.

Further, the consent to an adoption by a "certified organization" is not necessary to invoke the jurisdiction of the Probate Court in adoption proceedings under R. C. Chapter 3107. *State ex rel., v. Summers* (1974), 38 Ohio St. 2d 144.