## In re ADOPTION OF YODER.

[Cite as *In re Adoption of Yoder* (1989), 62 Ohio App.3d 820.]

Court of Appeals of Ohio,
Tuscarawas County.

Decided May 15, 1989.

*Connolly, Hillyer & Welch* and *Brad L. Hillyer,* for appellants.

*Martin A. Chapman,* for appellee, Dept. of Human Services.

MILLIGAN, Presiding Judge.

The Tuscarawas County Probate Court dismissed the petition of William and Mary Yoder, husband and wife, to adopt two infant siblings, aged three

and one-half and one and one-half, in the permanent custody of the Tuscarawas County Department of Human Services. In this appeal, petitioners assign three errors:

"Assignment of Error No. I

"The probate court erred to the substantial detriment of petitioners, William and Mary Yoder, when it failed to allow introduction of a video tape prepared by James Defeo, clinical psychologist, demonstrating the bonding between Bill and Mary Yoder and Ashlee and Billy Jackson.

"Assignment of Error No. II

"A. The trial court erred by its failure to apply the proper legal standard in its determination as to whether or not the adoption should have been granted.

"B. The trial court has unconstitutionally delegated its judicial decision making authority to the department of human services by stating in its judgment entry that it would [not] overrule the decision of the department unless an abuse of discretion is found.

"Assignment of Error No. III

"The manifest weight of the evidence clearly established that the petition of William and Mary Yoder should have been granted to permit them to adopt Ashlee Rae Jackson and William Michael Jackson."

Following a testimonial hearing to the court, the court issued its judgment, containing separate findings of fact and conclusions of law. Said judgment is attached and incorporated herein as an Appendix.

Petitioners are certified and licensed foster parents for the Tuscarawas County Department of Human Services since 1983. They have also completed the requisite training to be classified as adoptive parents.

On February 7, 1987 (following return of other foster children to natural parents), these two infants were placed with petitioners.

Proceedings to terminate parental rights were processed separately in the probate division, and following a termination judgment, appeal to this court, and affirmance of the judgment terminating parental rights in February 1988 (case No. 87AP060052), the infants were removed from the home of petitioners pending permanent adoptive placement.

Five days after removal of the children (over objection of petitioners), petitioners attempted to file an adoption petition. The curious refusal of the

probate court to temporarily permit the filing of the petition is not an issue in this appeal.

We address the assignments of error in order.

## I

A clinical psychologist interviewed the infants. The interview was videotaped. The psychologist testified. The trial court sustained the objection to the admission of the videotape.

Although the trial court could have concluded that the videotape, involving the children, would have been relevant and helpful (particularly inasmuch as the trial court had no opportunity to otherwise observe the children), the court did not err in the exercise of its discretion. Evid.R. 403(B).

The first assignment of error is overruled.

## II

Immediately prior to concluding to dismiss the petition, the court stated in its conclusion of law:

"7. * * * The Court will not, absent a finding of an abuse of discretion on the part of the Agency, overrule the determination that was made by said Agency. The Court finds no abuse of discretion.

"8. The Court finds that, even though the Petitioners would be suitable parties to adopt, there was no commitment made by the Department of Human Services in the first instance for them to be adoptive parents.

"9. The laws of placement were not fulfilled, and the best interests of the children require that the Petition for Adoption be denied."

The issue thus becomes: Where the agency "having permanent custody of the minor," R.C. 3107.06(C), withholds or refuses to grant consent to an adoption petition, what is the appropriate standard of trial court review thereof in an adoption hearing (trial)?

The Department of Human Services argues that the petitioners understood that the agency was "under no compulsion to offer these children for adoption"; there were no guarantees as regards adoption; no representations of right to adopt were made; the agency had a "rational and reasonable" basis for its decision to refuse to consent; and appellants misread *In re Harshey* (1974), 40 Ohio App.2d 157, 69 O.O.2d 165, 318 N.E.2d 544, and *State, ex rel. Portage Cty. Welfare Dept., v. Summers* (1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6.

Appellants argue: (1) the trial court abdicated its adjudicatory responsibility in favor of a stated standard akin to judicial review of the ruling of an administrative tribunal, and (2) such standard is unconstitutional as violative of the Ohio Constitution, Section 1, Article IV. In this argument, appellants rely upon *Harshey* and *Summers.*

In *Summers,* the Ohio Supreme Court reversed an order of prohibition issued by the court of appeals which prohibited the probate court from granting an interlocutory order of adoption under circumstances where the certified organization failed to recommend or consent to the adoption. The court stated in its syllabus:

"1. Adoption is a function which requires the exercise of the judicial power which is vested in the courts of this state pursuant to Section 4, Article IV of the Ohio Constitution.

"2. Original and exclusive jurisdiction over adoption proceedings is vested specifically in the Probate Court pursuant to R.C. Chapter 3107.

"3. R.C. 3107.06(D) may not operate to divest the Probate Court of its necessary judicial power to fully hear and determine an adoption proceeding.

"4. The refusal of consent to an adoption by a 'certified organization,' as defined in R.C. 3107.01(C), does not impair the jurisdiction of the Probate Court, but the recommendations and the reports, filed pursuant to R.C. 3107.05 and 3107.10, are to be considered, in conjunction with all other evidence adduced in the proceeding, by the court in deciding the issues presented by R.C. 3107.09, viz. (1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption."

From an examination of the entire opinion (including the distinction noted by Justice Herbert in his separate concurrence), we are satisfied that the Supreme Court put its stamp of approval on the Portage County Probate Court's consideration of the merits and the appropriate weight to be given, in the process, to the fact of denied consent.

The whole arena of termination of parental rights and adoption has come under scrutiny in this decade. It is clear that prompt and effective permanency planning for children is a national and state goal. It is equally clear that the appropriate trial courts are to exercise judicial, monitoring authority to assure that children will not be lost in the foster care bureaucracy.

The pronouncement of the Ohio Supreme Court in 1974 is consistent with this policy.

We conclude that the appropriate function of the trial court is *not* whether the bureaucracy has abused its discretion in closing the door on an adoption

petition by denying consent. The decision is a judicial, *not administrative*, matter. This rationale is consistent with the rationale achieved by the Adoption Assistance and Child Welfare Act (P.L. 96–272) enacted in 1980.

"It [the Act] addresses the need to eliminate additional barriers to adoption of children and to encourage state judicial systems to keep a closer hand on children removed from their homes. It recognizes that the welfare bureaucracy was allowed to develop and perpetuate a 'hands-on' policy toward children placed in their custody. Welfare monies continued to flow for children placed in foster care.   * * *

"Juvenile courts did not monitor the status and care of children in temporary custody of agencies. The only time juvenile judges were reminded of these children in temporary care was when they got in trouble. Judges saw them when they disobeyed, committed a crime or ran away.

" * * *

"**Permanency Planning**

"Consequently, there is increased awareness that children have a right, not to independence, but to dependence. We recognize that children need the custody of loving, dependable, continuous parenting which provides support, care, discipline, protection and motivation. They have a right to that parenting whether it comes from natural or adoptive parents. 'Everyone in our society has rights—and obligations. Children too! One of the emerging rights that is gaining more recognition is that *children have the right to permanency:* family and home that is theirs.' " Milligan & Loth, *Permanency Planning for Children (A New Ballgame in Appellate Courts)*, ABA Appellate Court Adm.Rev., 1982–83, Vol. IV, at 37.

We conclude that the trial court erred as a matter of law in applying an inappropriate standard or criterion *vis-a-vis* the appropriate legal and testimonial significance of the denial of consent by the agency.

Heeding the counsel of Justice Herbert in his separate concurrence in *Summers,* we disdain to conclude that the legislature could not constitutionally create classes of persons disqualified from adoption.

The second assignment of error is sustained.

### III

Having concluded that the trial court erred as a matter of law in Assignment of Error No. II, we do not reach the issue of whether the judgment is contrary to the weight and sufficiency of the evidence.

The third assignment of error is overruled.

The judgment of the Tuscarawas County Probate Court is reversed, the cause is reinstated and remanded to the Tuscarawas County Probate Court for further proceedings according to the tenor of this opinion and according to law.

*Judgment accordingly.*

HOFFMAN and GWIN, JJ., concur.

## APPENDIX

### STATE OF OHIO

### TUSCARAWAS COUNTY

### SS: COURT OF COMMON PLEAS

### PROBATE DIVISION

Cause Nos. 1447 and 1448

Filed Sept. 22, 1988

In the Matter of

The Adoption of

### ASHLEE RAE YODER and

### WILLIAM MICHAEL YODER

### JUDGMENT ENTRY

This matter was unofficially filed with this Court on the 29th day of March, 1988, at which time because of the nature of and the circumstances surrounding the placement of the children, the Court was not going to accept the filing of the Petition. The Children were not as required by law, "in the custody of the Petitioners, having been placed there for adoption." The children were not living with the Petitioners at the time of the attempted filing of the Petition, but had shortly prior to the filing of the Petition been living with the Petitioners in foster placement. They had been removed by the Agency having custody and placed with another couple for adoption.

The Court was of the opinion at the time of the filing of this Petition that the Petitioners did not have standing to file the Petition for Adoption, but because of the Supreme Court case of *State ex. rel. Portage County Welfare Department v. Summers*, 38 O.S.2nd 144, 67 O.O.2nd 154, and the case of *In*

*re Harshey,* 40 O.A.2nd 157, 318 N.E.2nd 544, the Court relented, allowed the Petition to be officially filed on April 22, 1988, and proceeded with the full hearing on the Petition, the Answers and Objections thereto.

The case was heard on the 16th day of June, 1988, and the 9th day of August, 1988. Thereafter, Counsel submitted briefs and closing arguments and the matter was left with the Court for determination.

The Court concedes that the case has presented problems for him in making this decision inasmuch as the feelings, emotions and sentiments of many persons were involved. The Court further concedes that but for the two cases mentioned above, this matter would probably not have required a full hearing.

## FINDINGS OF FACT

The Court hereby makes the following Findings of Fact in regard to the proceedings herein:

1. The Tuscarawas County Department of Human Services has three types of placements involving children:

    A) FOSTER CARE PLACEMENT, which means the children are placed with foster parents on a temporary basis to be cared for until they are returned to their parents or placed with other foster parents.

    B) CONSISTENT FOSTER CARE PARENTS, who are foster parents that have the right to be considered for adoptive placement if the children are kept in their custody for an exceptionally long period of time due to the circumstances of legal proceedings.

    C) ADOPTIVE PLACEMENT PARENTS, who are those parents who have received children from the first instance with the intent by all parties that an adoption be formalized if they are found to be suitable adoptive parents.

2. On the 17th day of February, 1987, the Jackson children were placed with the Petitioners as foster parents and remained there for approximately thirteen months while legal proceedings were going forward in the Tuscarawas County Juvenile Court; they were removed from the home of the Petitioners on March 24, 1988.

3. The children had been placed with the Petitioners as FOSTER PARENTS only, which status was subject to change during the course of placement if circumstances permitted same.

4. At no time during the course of placement were the Petitioners notified that their status had changed from FOSTER PARENTS to CONSISTENT FOSTER PARENTS status; however, it was conceded once the children were permanently placed with the Department of Human

Services by the Court, which placement was sustained on appeal, there was a possibility that said status could be changed.

5. The Department of Human Services, after the appeal was decided, was waiting for the Petitioners to express an absolute desire to adopt the children, but no expression in a positive way was forthcoming.

6. The Petitioners on a previous occasion had been foster parents for two other children, the Best Children, to whom they had become very fondly attached and whom they had expected to adopt, but said adoption never materialized because the Best Children were returned to their parents in the course of legal proceedings.

7. Throughout the placement of the children in this instant case, the Petitioners from time to time made comparisons of the Best Children and the Jackson Children in such a way that it caused concern to the Agency representatives as to whether there would always be a comparison made between these children, the Jackson Children, and the Best Children, whom they were unable to adopt in the previous case as noted above.

8. The Department discussed the circumstances with their adoption specialists and also among staff, and determined that the comparison would always be ongoing; furthermore, the Petitioners had not expressed a sincere desire to adopt the Jackson Children.

9. The communications between the parties broke down and inasmuch as the Agency had not received a positive affirmation from the Petitioners that they wished to adopt, it was determined in the best interests of said children by the Agency that placement for adoption should not be made; thereafter in accordance with the decision of the Agency, the children were removed from the home of the Petitioners on the 24th day of March, 1988 and placed with two other foster parents for the purposes of adoption and said children have lived with said parents since the 30th day of March, 1988.

10. Immediately upon learning that the children would be removed from the home of the Petitioners, Attorney Brad Hillyer, in behalf of the Petitioners, notified the Department of Human Services that they should reconsider their placement policy and allow the Petitioners to go forward with the adoption, but the Agency did not comply with said wishes.

11. Thereafter, in accordance with the foregoing facts, Attorney Hillyer filed these proceedings for adoption.

12. The evidence adduced at the hearing shows that the children were never placed with the Petitioners for the purpose of adoption as contemplated by law.

13. The evidence further indicated that no consent to the adoption was obtained from the Department of Human Services, the agency having custody of said children.

14. The evidence further shows that at the time the Petition was filed the children were not in the custody of the Petitioners; instead the children at that time were in the custody of ADOPTIVE PARENTS other than the Petitioners herein.

15. The evidence further reflected that the Petitioners were excellent foster parents, but in the judgment of the representatives of the Department of Human Services were not suitable parents for adopting the children in question herein.

16. There was no abuse of discretion on the part of the Agency in the type of placement made herein or the refusal to consent to the adoption by the Petitioners.

## CONCLUSIONS OF LAW

The Court hereby makes the following Findings and Conclusions of Law:

1. The placement of the children herein was not in accordance with the requirements of Section 5103.16 of the Revised Code.

2. The children were not living with the Petitioners at the time the Petition was filed herein nor were said children placed in the home of said Petitioners with the intent of having them adopt.

3. The Petitioners never were classified as ADOPTIVE PARENTS by the Department of Human Services.

4. The Department of Human Services, the agency having custody of said children, has not consented to this adoption as required under Section 3107.06(C) of the Revised Code.

5. The best interests of the children require that they not be adopted by the Petitioners because of their indecisions and complaints about the children when they did have custody of same.

6. The Children having been placed for adoption since their removal from the Petitioners' home, further damage would be caused to said children because of the additional move, thereby requiring further readjustment in their lives.

7. Although the suitability of the Petitioners to adopt children was clearly shown to the Court, the Agency made their determination that they were not suitable persons to adopt THESE CHILDREN (emphasis added). This determination was made on the basis of:

   A) the evidence before them,

B) their conversations with the Petitioners,

C) information they had received from persons within their staff,

D) the information received from the psychologist, Dr. Voelm,

E) the information received from Mr. Cowles, their adoption specialist.

The Court will not, absent a finding of an abuse of discretion on the part of said Agency, overrule the determination that was made by said Agency. The Court finds no abuse of discretion.

8. The Court finds that, even though the Petitioners would be suitable parties to adopt, there was no commitment made by the Department of Human Services in the first instance for them to be adoptive parents.

9. The laws of placement were not fulfilled, and the best interests of the children require that the Petition for Adoption be denied.

Judgment is entered accordingly in behalf of the Department of Human Services and the Petition for Adoption herein is DENIED. Costs in the amount of $180.80, are to be shared equally between the Petitioners and the Department of Human Services.

/s/ George J. Demis
Judge of the Probate Court

cc: Attorney Brad Hillyer (2)

Children's Services Unit

Prosecuting Attorney