OPINION
Janice Daniel appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which overruled her motion to restrain the removal of Jaivuan Martin from her foster care and her motion for visitation. She also appeals from a judgment of the Probate Division, which overruled her motion to stay the adoption proceeding and to intervene as a prospective parent. We consolidated Daniel's appeals.
On April 26, 1996, the Montgomery County Children Services Board ("MCCSB") filed a complaint in the juvenile court seeking permanent custody of Jaivuan, who had tested positive for cocaine at the time of his birth on November 6, 1994 and had been in the foster care of Daniel since infancy. In an entry dated October 18, 1996 a magistrate adjudicated Jaivuan a neglected child and placed him in the permanent custody of MCCSB. According to the April 1997 amendment to Jaivuan's case plan, MCCSB planned to register him with several adoption recruitment agencies because, although Daniel was "considering adopting Jaivuan," she "ha[d] been given the adoption packet but ha[d] not returned the paperwork." MCCSB planned to "pursue all possible resources for Jaivuan."
On March 11, 1998, Daniel filed a Civ.R. 65 motion in the juvenile court for an order restraining the removal of Jaivuan from her home. In Daniel's attached affidavit, she swore that MCCSB "did not proceed with any formal process to let [her] know the child is to be removed from [her] home" and that she believed that removing Jaivuan from her home would cause him "immediate and irreparable harm." According to the case plan amendment filed on April 9, 1998, Jaivuan was placed in his adoptive home on March 13, 1998. On August 4, 1998, Daniel filed a motion for visitation with Jaivuan. On September 25, 1998, the magistrate dismissed Daniel's motions "without prejudice because of lack of jurisdiction," and the trial court adopted the magistrate's decision. Daniel did not file written objections to the magistrate's decision as required by Juv.R. 40(E)(3)(b) to preserve any alleged errors for appeal. Daniel filed a notice of appeal on October 6, 1998.
Meanwhile in probate court, Daniel filed a motion to stay the adoption proceeding and to intervene as a prospective parent on September 10, 1998. On September 15, 1998, the probate court overruled Daniel's motion based on its finding that "there is no legal reason to allow [Daniel] to intervene." On September 17, 1998, Daniel appealed the denial of her motion. On September 29, 1998, Daniel filed in this court a motion to stay the adoption proceedings, and we overruled the motion on October 1, 1998. The next day, the probate court entered a final decree of adoption, which Daniel appealed on October 8, 1998. On December 2, 1998, we consolidated Daniel's appeals. Daniel raises two assignments of error.
 I. THE TRIAL COURT ERRED IN ITS HOLDING THAT APPELLANT HAD NO LEGAL REASON TO INTERVENE IN AN ADOPTION PROCEEDING.
Daniel contends that the probate court should have permitted her to intervene in the adoption proceeding pursuant to Civ.R. 24(A)(2) because she had been a "priority applicant for adoption," she had served as Jaivuan's only foster parent for three continuous years, she had relocated in reliance on MCCSB directions that she find suitable housing, and she had completed the adoption application process except for the home study, which MCCSB was required to conduct pursuant to R.C. 3107.031. Because Daniel's claims that she had relocated in reliance on MCCSB representations and that she had completed the adoption application are not supported by the record, we will consider only whether Daniel's status as Jaivuan's foster parent and as a "priority applicant for adoption" conferred upon her a legally protectible interest in the adoption proceeding.
Civ.R. 24(A)(2) provides:
 (A) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
A person seeking to intervene under Civ.R. 24(A)(2) must first show that he has a "legally protectible interest." In re Adoptionof Ridenour (1991), 61 Ohio St.3d 319, 329.
Although the Supreme Court in Smith v. Org. of FosterFamilies for Equality Reform (1977), 431 U.S. 816, 847, found it unnecessary to resolve the "complex and novel questions" raised by the foster parents' claim to a constitutionally protected liberty interest in their status as foster parents, the Smith Court stated that, in determining the procedural due process rights of foster parents, "it is appropriate to ascertain from state law the expectations and entitlements of the parties." Id. at 845-846.
In Renfro v. Cuyahoga Cty. Dept. of Human Serv. (C.A.6, 1989), 884 F.2d 943, 944, the Sixth Circuit stated:
 Under Ohio law, the rights and limitations of the foster care relationship are clearly defined. Foster parents have no mechanism to challenge the removal of a foster child from their care; they have no statutory right to a hearing either before or after the child has been removed; nor are they entitled to a written explanation for the agency's action or an appeal. The temporary nature of the foster care relationship provides sufficient notice to all participants that their rights are limited. (Citations omitted.)
The Renfro court recognized the "strong emotional bond that might evolve in a foster care situation," but declined to characterize the relationship as a constitutionally protected liberty interest, instead describing it as "a temporary arrangement created by state and contractual agreements." Id. at 944. "Foster parents care for a child as agents of the children services board, which is the child's legal custodian." In re Winkle (Mar. 31, 1997), Butler App. No. CA96-11-236, unreported.
Similarly, the Ohio Supreme Court in Ridenour held that the probate court had erred in granting the adoptee's grandparents' motion to intervene in the adoption proceeding because "unless the [grandparents] are themselves seeking to adopt, they do not have an interest in the adoption proceeding per se sufficient to give them standing to intervene." Ridenour, 61 Ohio St.3d at 330. "Under Ridenour and its progeny biological grandparents do not have standing in adoption proceedings; former foster care providers have no inherent legally protected interest to object to an adoption." State ex rel. Hitchcock v. Cuyahoga Cty. Court ofCommon Pleas, Probate Div. (1994), 97 Ohio App.3d 600, 609.
In 1996, the Ohio General Assembly enacted R.C. 5103.161, which provided, in pertinent part:
 If a * * * public children services agency has placed a child in a foster home or with a relative of the child, other than a parent of the child, the agency shall notify the child's foster parent or relative if the agency seeks permanent custody of the child, or, if the agency already has permanent custody of the child, seeks to place the child for adoption. If the foster parent or relative informs the agency that the foster parent or relative wants to adopt the child, the agency shall inform the foster parent or relative of the process for obtaining an application to adopt the child and that the child may be placed for adoption in another home even if the foster parent or relative submits the application. If the agency is given permanent custody of the child and the foster parent or relative has informed the agency of the foster parent's or relative's desire to adopt the child, the agency shall give priority to the foster parent or relative when determining where to place the child for adoption, unless the agency determines such placement is not in the child's best interest.
Furthermore, the MCCSB policy statement on adoptions explained that MCCSB would notify foster parents in writing if one of their foster children became available for adoption and that the letter would explain that they would receive "priority consideration (after relative) as an adoptive placement for the child, unless the agency determines that such placement is not in the best interest of the child."
Pursuant to R.C. 5103.161 and MCCSB policy, Daniel was a priority applicant for adoption. Ohio courts have not yet addressed the effect of R.C. 5103.161 on the previous state of the law that foster parents have no constitutionally protectible interest in the foster care relationship. It is unnecessary for us to reach the issue of whether Daniel's status as a priority applicant for adoption was a legally protectible interest because, even assuming that it is, the record does not show that Daniel sought to exercise her alleged interest. Noteably, the record does not demonstrate that Daniel initiated an adoption proceeding by filing a petition in the probate court in compliance with R.C.3107.05. Daniel asserts that MCCSB blocked her ability to adopt Jaivuan by failing to conduct a home study; however, the record does not demonstrate that she submitted an application or that the agency refused to conduct a home study. Moreover, even if MCCSB had not consented to the adoption, Daniel could have pursued an adoption proceeding in the probate court, and the probate court could have granted Daniel's petition despite the lack of MCCSB consent. See In re Adoption of Yoder (1989), 62 Ohio App.3d 820,823-824; former R.C. 3107.06(C); former R.C. 3107.07(F). Because the record does not show that Daniel attempted to exercise her alleged liberty interest by pursuing an adoption, we are constrained to conclude that the probate court did not err in denying her request to intervene.
The first assignment of error is overruled.
 II. THE JUVENILE COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY THEIR [SIC] UNTIMELY DECISION TO REFUSE JURISDICTION OF THE APPELLANT'S MOTION.
Daniel argues that the juvenile court erred in determining that it lacked jurisdiction to grant her motions for a restraining order and for visitation.
R.C. 2151.417(B) provides:
 (B) If a court issues a dispositional order pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code, the court has continuing jurisdiction over the child as set forth in division (E)(1) of section 2151.353 of the Revised Code. The court may amend a dispositional order in accordance with division (E)(2) of section 2151.353 of the Revised Code at any time upon its own motion or upon the motion of any interested party.
In the case of an adopted child, the juvenile court's jurisdiction continues until "the child is adopted and a final decree of adoption is issued." R.C. 2151.353(E)(1). In In re Moorehead
(1991), 75 Ohio App.3d 711, 719, we held that foster parents "had standing to seek a review by the trial court of the agency's actions regarding the placement and custody of [their foster child]." We explained:
 The statute contemplates that one not a party to the original action may subsequently seek a review of an agency's plan. The open-ended language of the statute provides for the possibility of subsequently changing the custodial arrangement of a child placed in the permanent custody of an agency. It provides a trial court with the broad authority and discretion necessary to reconsider and to modify a child's custodial arrangement when reviewing the appropriateness of any agency action if to do so would be in the best interest of the child.
The juvenile court's continuing jurisdiction "includes holding additional hearings upon the court's own motion or that of any party to reconsider the original order of disposition." In reHitchcock (1996), 120 Ohio App.3d 88, 98.
In this case, the juvenile court erred in concluding that it lacked subject matter jurisdiction to rule on Daniel's motions. Daniel, however, did not file objections to the magistrate's decision as required by Juv.R. 40(E)(3)(b). We are left to determine whether the trial court's adoption of the magistrate's decision constituted plain error. In our judgment, plain error is not demonstrated on this record. Had the restraining order been issued or visitation rights been granted, the result of the adoption proceedings would not clearly have been otherwise.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and KOEHLER, J., concur.
(Hon. Richard N. Koehler sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Carley J. Ingram, David R. Miles, Gwendolyn R. Bowers Hon. George J. Gounaris