JOURNAL ENTRY and OPINION
{¶ 1} Appellant Cuyahoga County Department of Children and Family Services ("CCDCFS") appeals from an order of the probate division of the common pleas court denying Cheryl Denise Young's petition to adopt the minor child, Diamond Cashay Taylor. CCDCFS urges that:
 {¶ 2} I. THE DECISION OF THE PROBATE COURT DENYING PETITIONER CHERYL YOUNG'S PETITION FOR ADOPTION OF THE MINOR CHILD DIAMOND CASHAY TAYLOR IS CONTRARY TO LAW AND PUBLIC POLICY AND IS THEREFORE AN ABUSE OF DISCRETION.
 {¶ 3} II. THE DENIAL OF PETITIONER CHERYL YOUNG'S PETITION FOR ADOPTION OF MINOR WAS AN ABUSE OF DISCRETION AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 4} For the following reasons, we find the probate court abused its discretion by giving decisive weight to factors not relevant to the best interests of the child in ruling on the adoption petition. In reAdoption of Ridenour (1991), 61 Ohio St.3d 319. Therefore, we reverse and remand for reconsideration.
 FACTUAL AND PROCEDURAL BACKGROUND
{¶ 5} The minor child (born January 1, 1994) was placed in the permanent custody of the CCDCFS on May 5, 1998, which immediately placed her with her paternal aunt, petitioner Cheryl Denise Young, for purposes of adoption. On May 4, 2000, Ms. Young filed her petition for adoption of the child. The CCDCFS consented to the adoption.
{¶ 6} A prefinalization adoption assessment report recommended that the court grant the petition. The report noted that the petitioner was healthy physically and mentally, had a clean, livable, furnished home in a residential community, held steady employment for the last 13 years and was financially able to meet the child's needs, and had maintained a committed, though unmarried, relationship with Terry Harris for the past 19 years. The child was well adjusted to her placement with petitioner and was doing well academically and behaviorally.
{¶ 7} The magistrate held a hearing on the petition on July 19, 2000. At that hearing, the child reported that she often slept with Mr. Harris. A CCDCFS investigation ensued in November 2000. This investigation resulted in a finding that there was no evidence of abuse and the child was safe. Another hearing was then held on December 13, 2000. No transcript of either hearing has been prepared.[1]
{¶ 8} The magistrate's report on the petition for adoption was filed with the court on September 26, 2001. The magistrate noted that the petitioner, an unmarried adult, was eligible to adopt the child under R.C. 3107.03(B), and that it was the court's obligation to give due consideration to all known factors in determining whether adoption was in the child's best interests. In re Charles B. (1990), 50 Ohio St.3d 88, paragraph three of the syllabus. The magistrate further noted that R.C.3107.061 enumerated several factors the court was required to consider in assessing the child's best interests.
{¶ 9} The magistrate found that the child clearly wished to be adopted "and to have both adults in the home as her parents." However, she found the question whether the adoption would create a more stable and permanent family relationship to be "unusual" because the petitioner already had a relationship with the child as her aunt, but Mr. Harris had no legal relationship to the child either before or after the adoption. Therefore, the magistrate concluded, "[t]he relationships currently in place, or those created by adoption, remain ambiguous."
{¶ 10} While acknowledging that the CCDCFS's investigation found nothing inappropriate in the relationship between Mr. Harris and the child, the magistrate found the very close relationship between the child and Mr. Harris disturbing, and was concerned that the child "believes in a relationship with Mr. Harris that does not exist," or "does not exist legally." The magistrate further noted that "[i]t is within the power of the adults in this living situation to provide Diamond with security and legal relationships she already believes she enjoys," and that "[w]hen creating a permanency plan for the child, any ambiguities [in the relationship among the petitioner and Mr. Harris] should be resolved prior to the finalization of an adoption."
{¶ 11} The magistrate also expressed concern about the petitioner's testimony that she intended to make Mr. Harris a joint owner of her home because Mr. Harris's funds were used to purchase the home. The magistrate said: "In effect, Diamond, as the child of Ms. Young, would be denied the benefit of being Ms. Young's sole heir at law. This clearly could affect Diamond's future security in the event of Ms. Young's death or disability."
{¶ 12} Finally, the magistrate noted that Mr. Harris's contributions to the care and maintenance of the home were "unclear," and that petitioner appeared to be responsible for the payment of all household bills. "Clearly then," the magistrate concluded, "the adoption subsidy granted upon finalization of the adoption, would, in fact, be used to help provide a home for Mr. Harris." The magistrate therefore recommended that the petition for adoption be denied.
{¶ 13} The CCDCFS objected to the magistrate's report. The court found the objections were "not well taken" and overruled them, adopting the magistrate's findings and conclusion and determining that the adoption was not in the child's best interests. The court therefore denied the petition for adoption.
 LAW AND ANALYSIS
{¶ 14} Our review of the probate court's decision in this case is limited by the fact that the CCDCFS has not supplied us with a record of the evidence presented to the magistrate. Absent any transcript or other record[2] of the proceedings, we must assume the court's factual findings are correct. Therefore, we overrule the second assignment of error, which complains that the judgment is against the manifest weight of the evidence.
{¶ 15} Nevertheless, we find that the court abused its discretion by giving decisive significance to factors not relevant to the best interests of the child. In deciding whether to grant or deny a petition for adoption, the trial court must consider, first, whether the petitioner is qualified to care for and rear the child, and second, whether the adoption will promote the child's best interests. State exrel. Portage County Welfare Dept. v. Summers (1974), 38 Ohio St.2d 144, paragraph four of the syllabus. The court here apparently found the petitioner was qualified to care for the child, but concluded that the adoption would not be in the child's best interests.
{¶ 16} The court's primary concern appears to have been the strong bond already established between the child and Mr. Harris, on the one hand, and the fact that the adoption by petitioner would not make that relationship any more permanent. However, an adoption by one parent does not contravene the best interests of the child simply because an even stronger set of family bonds might be desirable. R.C. 3107.03(B) makes an unmarried adult eligible to adopt. The best interests of the child are not served by denying the child a stable and permanent relationship with one parent simply because two parents might be better. This is especially true when the single parent has already established a strong relationship with the child and is providing a stable home for her, while the ideal two-parent family, if it exists, has not been identified and may not be found before the child reaches adulthood.
{¶ 17} To the extent that the court was concerned about the stability of the parties' home life, we note that marriage is not the only way to demonstrate commitment to a relationship, as the court below apparently assumed.[3] Marriage is, at best, proof of an intent to remain committed to one another; other factors may show commitment as well. There is no indication that the relationship among the petitioner, the child and Mr. Harris is unstable. The fact that the petitioner and Mr. Harris had been together for nineteen years should have some weight. That their relationship may not go on forever does not mean that the child should be denied a permanent relationship with the petitioner.
{¶ 18} The court's concern that the child would not obtain the benefit of being the petitioner's sole heir in the event of the petitioner's death or disability, and its concern that the adoption subsidy would be used to provide a home for Mr. Harris, are both unfounded and unrelated to the question whether adoption would be in the child's best interests. The child's future security is not necessarily tied to the ownership of the petitioner's home, as the court apparently assumed. And the lack of evidence as to Mr. Harris's financial contributions to the household does not warrant the assumption that the adoption subsidy will be misused for his support. Neither of these vague concerns about the potential for future unfairness toward the child is sufficiently real to be relevant to the child's best interests.
{¶ 19} "While it is not our province to advise the court as to the proper ruling on the adoption petitions, the trial judge does not appear to have considered the [child's] best interests in issuing the denials."In re Adoption of Ridenour, 61 Ohio St.3d at 322. Therefore, we reverse and remand for the court to reconsider the factors relevant to the child's best interests, including those listed in R.C. 3107.161.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee its costs herein.
It is ordered that a special mandate be sent to the common pleas court, probate division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. AND COLLEEN CONWAY COONEY, J. CONCUR
[1] CCDCFS's counsel filed a praecipe in connection with this appeal directing the clerk of the probate court to assemble the record including a complete transcript under App.R. 9(B). However, the record does not show that counsel directed the court reporter to prepare the required transcript. See App.R. 9(B). When the time for filing the record had passed and no transcript was filed, this court dismissed this appeal for failure to file the record. CCDCFS moved the court to reconsider its dismissal, asserting that the local probate rules do not require that proceedings be recorded, and "if no transcripts were filed with the record, it is because no such transcripts exist or were requested in the Probate Record." This court granted the motion for reconsideration and ordered appellant to file an amended praecipe by February 22, 2002. Appellant claimed an amended praecipe was filed, but it does not appear in our record.
[2] If no transcript is available, then "appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." App.R. 9(C). This statement must be served on the opposing party, who may object or propose amendments. The statement, objections, and amendments must be submitted to the trial court for settlement and approval.
[3] Nor does it in fact demonstrate commitment, as the divorce rate attests. Even if petitioner and Mr. Harris were married and both adopted the child, there is no guarantee that the family would remain together until the child reached adulthood.