JUDGMENT: Affirmed
 OPINION
Appellant Virginia Jones appeals from the May 20, 1999, Judgment Entry of the Licking County Court of Common Pleas, Probate Division, denying appellant's Petitions for Adoption of her five minor grandchildren. Appellee is the Licking County Department of Human Services.
 STATEMENT OF THE FACTS AND CASE
On February 8, 1999, appellant, Virginia Jones, filed petitions in the Licking County Probate Court for the adoption of her five minor grandchildren. The children's mother is Cheri Jones, appellant's daughter. In July of 1997, the children were removed from Cheri's home and in the fall of 1997 the children were placed in the temporary custody of the Licking County Department of Human Services, Children Services Division (hereinafter "the Agency"), by the Licking County Juvenile Court. The Agency, in January, 1998, had completed a home study on appellant to determine if the children could be placed with appellant. However, the home study was unable to recommend that appellant be approved as a relative caregiver for the children based, in part, on her poor judgment and decision making and the record of physical abuse between appellant and Cheri. Permanent custody was granted to the Agency on September 18, 1998, after an August 14, 1998, trial. In the permanent custody proceeding, the Juvenile Court made a specific finding that: "There are no fit or suitable relatives who are able to take permanent custody of these children." (State's Exhibit 1, Finding of Fact No. 11). No parent appealed the permanent custody order. Seventeen days after the permanent custody hearing in Juvenile Court, appellant filed a Motion to Intervene as a legal party to the Juvenile Court proceeding. The Juvenile Court denied appellant's Motion to Intervene and appellant appealed that denial. On January 19, 1999, the Fifth District Court of Appeals affirmed the judgment of the Licking County Juvenile Court regarding the intervention issue. (Case No. 98-CA-1001 unreported). At the time the adoption petitions were filed by the appellant in this matter, all five children had been residing in the same potential adoptive home. The children had been residing in such home since October of 1998. (All parental rights had been terminated on September 18, 1998.) A report on appellant's proposed adoption was filed on February 8, 1999, following a home study by an assessor. The assessor, in her report, stated that, she could not make a recommendation for placement in appellant's home "until such time that the targeted children would be placed with her [appellant]." Appellant on April 6, 1999, filed a motion pursuant to R.C. 3107.12 requesting that the minor children be placed with her prior to the hearing on appellant's adoption petitions. However, the trial court, pursuant to a Judgment Entry filed three days later, denied appellant's motion stating that there was "no factual or legal basis upon which the requested relief can or should be granted." The Agency, on April 9, 1999, filed a "Withholding of Consent" to appellant's request to adopt her grandchildren arguing that appellant was not "suitably qualified to care for and rear" her five grandchildren and that the best interests of the children would not be promoted by allowing the adoption. Thereafter, a hearing on appellant's adoption petitions was held on May 18, 1999. The following evidence was adduced at the hearing. As is stated above, all five children are the children of Cheri Jones, appellant's daughter. At the time of the hearing, the oldest child was ten and the youngest three. In addition to Cheri, appellant has three teen-age daughters who reside with her. When Cheri was approximately eight years old, appellant married David Jones, who began sexually abusing Cheri shortly thereafter. Cheri was sexually abused by David Jones for approximately seven years. Appellant admitted that the abuse was taking place in the home while appellant was present, but appellant was not aware of the abuse. (State's Exhibit 2). When Cheri was 14 years old, she gave birth to the first of three children she would have with David Jones. At the time appellant divorced David Jones in August of 1988, Cheri was pregnant. After the divorce, Cheri left with David Jones whom she later married. When asked at the adoption hearing, appellant testified that she did not feel responsible for David Jones fathering children with Cheri and asked "How would I be responsible?" Transcript of Proceedings at 75. Cheri, who has an extensive history of drug and alcohol abuse and is addicted to crack cocaine, has a criminal history including arrests for prostitution and carrying a concealed weapon. Although appellant testified that she did not know if Cheri was using drugs or alcohol, Michele Whaley, an Agency caseworker, testified that she had spoken with appellant about Cheri's drug use. When Whaley was asked how she would characterize appellant's awareness or ability to admit to Cheri's drug and alcohol problem, Whaley testified as follows: "She was very, very evasive with me. Frequently where games were played, I would ask her questions about, what is Cheri using, and she would say she didn't even know that she had been using. And I would say, you know, it's fairly obvious and give her the reasons why it was obvious to me that she had been using. And she would say, well, I can't say she's using because I've never actually seen her do it myself.
Then I would say, I know you haven't seen her but when you see her behaving like this, when you see her missing visits, disappearing for days on end, then when she comes home frequently, there would be black eyes, missing teeth, physical injuries that you could see. At one point I had gone over to Mrs. Jones' home and Cheri was pretty much passed out on the couch. And she did have a positive drug screen for crack after that. So, even when I confronted her with those things, she would say, well, I can't say that she's using because I have never seen her do it." Transcript of Proceedings at 109.
Before the five children were removed from Cheri's care, Cheri lived with the children in a rental house owned by appellant. Although appellant testified that she was at the house "every day", appellant admitted that, the day the children were removed from Cheri's home in 1997, appellant was surprised how dirty the house was, and how little food there was in the house. Moreover, appellant was unaware that one of Cheri's children had approximately 15 bite marks all over his back. Michele Whaley, the Agency caseworker, testified that appellant "told me that she had regular contact with the children prior to the agency removing them from Cheri's home. But yet there is a little boy with 15 bite marks on his body. He was black and blue from them. She appeared to have no knowledge about these bite marks until she was told about them." Transcript of Proceedings at 111. Whaley also testified that Cheri's "home was a wreck" and that there was broken glass all over the floor. Transcript of proceedings at 111-112. After the children were removed from Cheri's house, appellant, Whaley testified, brought Cheri in for visitation with the children when Cheri was under the influence of drugs or alcohol. In addition, appellant brought James Hanes, Sr. one of the children's father, to a visit with the children when he was intoxicated. Although the Agency caseworker pointed out to appellant that Hanes smelled strongly of alcohol, had bloodshot eyes and was having difficulty focusing on things, appellant testified that "[t]hey say he was intoxicated but I didn't know that he was, so he couldn't have been that drunk." Transcript of Proceedings at 63. Although appellant saw no problem with Hanes visiting his child, she previously had told Whaley that Hanes was "domestically violent." Transcript of Proceedings at 110. On another occasion, appellant, who was warned about Cheri's drug and alcohol abuse problem, let her younger daughter, Christina, leave with Cheri in appellant's car to go to the movies. After the two did not return that evening, appellant reported her car stolen. When Christina returned home the next day, appellant learned that Christina had been raped in an apartment. Appellant, however, did not prosecute Cheri for taking her car or pursue prosecution regarding Christina's rape. While appellant testified that she would not have let Christina go with Cheri if Cheri had been on drugs, appellant admitted that she didn't know whether Cheri had stopped using drugs or alcohol. At the adoption hearing in this matter, testimony was also adduced as to the special needs of appellant's grandchildren. Michele Whaley, the Agency caseworker, testified that the five children have emotional and behavioral problems, developmental delays, speech problems and learning delays. Whaley also testified that the children "need someone who is able to be very consistent, very predictable." Transcript of Proceedings at 116. Whaley further testified that she did not believe that appellant had the parenting skills to be able to meet the children's special needs and that it would be in the children's best interest for them to be adopted by the family with whom they were living at the time of the hearing. According to Whaley, if the children were exposed to their mother, they would "become very chaotic again" and would regress. Transcript of Proceedings at 119. Despite Cheri's problems, however, appellant testified that if her petitions for adoption were granted, she would allow Cheri to be around the children on a particular day provided Cheri was not under the influence of drugs or alcohol. Whaley also testified that the children have prospered in their current placement. At the conclusion of the hearing, the children's Guardian ad Litem recommended that appellant's petitions to adopt the children be denied based on appellant's evasiveness regarding certain matters, her extremely poor judgment on numerous occasions, her failure "to grasp the seriousness of the problems that her ongoing contact with Cheri would bring to the children" and her "inability to either admit or identify obvious patterns of drug and alcohol abuse." Transcript of Proceedings at 149-150. The Guardian Ad Litem also voiced concerns about appellant's financial ability to support her five grandchildren in addition to her own children on her $40,000.00 yearly income and about the fact that appellant intended to allow Cheri to have contact with the children if the adoption petitions were granted. The trial court, at the conclusion of the hearing, denied appellant's adoption petitions, finding that appellant "is not suitably qualified to care for and rear these children and the Court is going to make a further finding that the best interest of these children will not be promoted by adoption by the petitioner and, to the contrary, the Court believes that the best interests of the children will be served by adoption with the foster family." Transcript of Proceedings at 153. The trial court, in so holding, put considerable weight on the Guardian Ad Litem's recommendation. Pursuant to a Judgment Entry filed on May 20, 1999, the trial court denied appellant's petitions for adoption. A Decision filed the same day was incorporated into the Judgment Entry. It is from the May 20, 1999, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO PLACE THE GRANDCHILDREN WITH HER, PURSUANT TO R. C. 3107.12.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S ADOPTION PETITIONS.
Pursuant to App. R. 6(B), this case has been assigned to the court's accelerated calendar.
 I
Appellant, in her first assignment of error, maintains that the trial court abused its discretion in denying appellant's April 6, 1999, motion pursuant to R.C. 3107.12 requesting that the five minor children be placed with her prior to the May 18, 1999, hearing on appellant's adoption petitions. We disagree. We agree with the finding made in the Judgment Entry filed on April 9, 1999, in which the trial court denied appellant's motion, finding that "under the particular and unusual facts of these cases there is no factual or legal basis upon which the requested relief can or should be granted." R.C. 3107.12 provides, in part, as follows:
"(A) except as provided in division (B) of this section, an assessor shall conduct a prefinalization assessment of a minor and petitioner before a court issues a final decree of adoption or finalizes an interlocutory order of adoption for the minor. On completion of the assessment, the assessor shall prepare a written report of the assessment and provide a copy of the report to the court before which the adoption petition is pending.
The report of a prefinalization assessment shall include all of the following:
 (1) The adjustment of the minor and the petitioner to the adoptive placement; (2) The present and anticipated needs of the minor and the petitioner, as determined by a review of the minor's medical and social history, for adoption-related services, including assistance under Title IV-E of the "Social Security Act" 94 Stat. 501 (1980), 42 U.S.C.A. 670, as amended, or section 5153.163 of the Revised Code and counseling, case management services, crisis services, diagnostic services, and therapeutic counseling. (3) The physical, mental, and development condition of the minor; (4) If known, the minor's biological family background, including identifying information about the biological or other legal parents; (5) The reasons for the minor's placement with the petitioner, the petitioner's attitude toward the proposed adoption, and the circumstances under which the minor was placed in the home of the petitioner; (6) The attitude of the minor toward the proposed adoption, if the minor's age makes this feasible; (7) If the minor is an Indian child, as defined in 25 U.S.C.A. 1903(4), how the placement complies with the "Indian Child Welfare Act of 1978," 92 Stat. 3069, 25 U.S.C.A. 1901, as amended.
The assessor shall file the prefinalization report with the court not later than twenty days prior to the date scheduled for the final hearing on the adoption unless the court determines there is good cause for filing the report at a later date."
Such section, as the Guardian ad Litem correctly notes, enables the trial court to assess how a child has adapted to a pre-adoption placement. Appellant argues that since the pre-finalization assessment must be done by the assessor and submitted to the Probate Court prior to the Probate Court's issuance of a final decree of adoption (or finalization of an interlocutory order of adoption for a minor) and that since this pre-finalization assessment is done to evaluate how a child has adapted to his or her pre-adoption placement, then the Probate Court should have ordered placement with the appellant in this case. Appellant argues that this pre-adoptive placement with appellant was necessary in order for the pre-finalization assessment to take place. However, appellant has incorrectly analyzed the law. First of all, nothing in R.C. 3107.12 requires the trial court to place a child with an adoption petitioner. It just requires the pre-finalization assessment to be done on a placement that has occurred with an adoption petitioner. Secondly, the issue of who can place a child for adoption and under what conditions is set forth in R.C. 5103.16. Generally, R.C. 5103.16
allows a child to be placed for adoption by a public childrens service agency or by a probate court after application by the parents of the child to be adopted or, when the parents are deceased or have abandoned the child, after application by a relative seeking adoption or department of human services which has custody.
Therefore, we find that R.C. 3107.12 did not require that placement of the children in the case sub judice be made with the appellant. The conditions of placement are set forth in R.C.5103.16(D). If a child has been placed pursuant to that section, then the 3107.12 pre-finalization assessment must be done on that placement and prior to the final decree of adoption (or finalization of an interlocutory order of adoption of a minor child). Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in her second assignment of error, contends that the trial court abused its discretion in denying appellant's petitions to adopt her five minor grandchildren. We disagree. From our analysis of the first assignment of error it is apparent that the petition for adoption could not have been granted until the pre-finalization assessment was done and that could not be done because the appellant could not legally get placement of the children for adoption. In addition, R.C. 3107.13 indicates that a final decree of adoption shall not issue (nor shall an interlocutory order of adoption be finalized) until the person to be adopted has lived in the adoptive home for at least six months. In sum, the requirements set forth in R.C. 3107.12 and R.C.3107.13 must be met before a final decree of adoption can issue and they could not be met in this case because the appellant was unable to get legal placement of the child. Therefore, denial of the Petition for Adoption could have been denied on procedural grounds. However, since the trial court did hold an evidentiary hearing in this matter, we will analyze whether or not the trial court abused its discretion in denying the adoption petition based on the facts. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. As is stated above, the Agency in this case withheld its consent to appellant's adoption of her five minor grandchildren. While the Agency's refusal of consent to the adoption does not impair the jurisdiction of the Probate Court, any recommendations and reports filed by the Agency pursuant to R.C. 3107.05 and R.C. 3107.10 are to be considered, in conjunction with all other evidence adduced in the proceeding, in determining the following: (1) whether the petitioner is suitably qualified to care for and rear the child, and (2) whether the best interests of the child will be promoted by the adoption. State ex rel. Portage County Welfare Dept. v. Summers (1974), 38 Ohio St.2d 144, 152. See also In Re Adoption of Ridenour (1991), 61 Ohio St.3d 319. R.C. 3107.161(B) sets forth the factors that a trial court should consider in a contested adoption when determining whether the adoption is in the best interest of a child. R.C. 3107.161
specifically provides as follows: (B) When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant factors including, but not limited to, all of the following:
 (1) The least detrimental available alternative for safeguarding the child's growth and development;
 (2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
 (3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
(4) The duration of the separation of the child from a parent;
 (5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
 (6) The likelihood of safe reunification with a parent within a reasonable period of time
 (7) The importance of providing permanency, stability, and continuity of relationships for the child;
 (8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (9) The child's adjustment to the child's current home, school, and community;
 (10) The mental and physical health of all persons involved in the situation;
 (11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.
(C) A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative.
Appellant argues that the trial court abused its discretion in denying her adoption petitions since the trial court showed "unfair bias" against appellant, punishing her for loving her daughter Cheri and/or for Cheri's misconduct. Appellant further maintains that the trial court "prejudged" appellant's adoption petitions. However, upon review of the record, we find that the trial court did not abuse its discretion in denying appellant's adoption petitions since there was competent, credible evidence that appellant was not suitably qualified to care for and rear the children and that the best interests of the children would not be promoted if the adoption were permitted to proceed. We further find that, although the trial court did not specifically enumerate the factors set forth in R.C. 3107.161(B) in its decision, it clearly did consider such factors in making its decision. At the hearing, competent, credible evidence was presented that appellant, who has no criminal convictions, exercised poor judgment in regard to both her own children and her grandchildren. On at least two occasions, appellant took either Cheri or James Hanes, Sr., who were visibly intoxicated, to visit with the children at the Agency. Despite being told by a caseworker of Cheri's serious alcohol and drug problems, appellant continues to deny that such a problem exists. Such denial, perhaps, resulted in appellant permitting her 14 year old daughter, Christina, to go off alone with Cheri. As is stated above, after Christina and Cheri did not return home that night, appellant learned that Christina had been raped. Cheri herself had been sexually assaulted by appellant's then husband when Cheri was approximately eight years of age. However, despite Cheri's serious problems and the Agency's caseworker's strong caution against allowing Cheri any contact with the minor children since such contact would be harmful, appellant testified that she would allow Cheri to visit with the children if Cheri did not appear under the influence at the time of the visits. We agree with the trial court's findings that such a position is "simply incomprehensible" and that for the children to have future contact with Cheri would be detrimental to the children's welfare and best interests. Appellant, therefore, clearly fails to recognize the danger that Cheri poses to her children. Moreover, although appellant claimed to have seen the children every day before they were removed from Cheri's home in 1997, appellant was unaware of the deplorable conditions in which the children were living. Appellant, at the time of the May 18, 1999, hearing, had not talked to her grandchildren for approximately eight months. Furthermore, as was developed at the May 18, 1999, hearing, the five children, combined, have significant speech problems and behavioral problems and are not, as the trial court noted in its May 20, 1999 Decision, "average, well-adjusted children." As Michele Whaley, the Agency caseworker, testified, due to their special needs, the children, who ranged in age from three to ten at the time of the hearing, require individuals with extraordinary parenting skills. Whaley believed the childrens' potential adoptive family, could provide the care and stability that the five children need. According to Whaley, the children have prospered in the home of their potential adoptive family and have made strides both in school and developmentally. Whaley also testified that the potential adoptive parents "are very strong advocates for their children in getting what the kids need right when they need it." Transcript of Proceedings at 121. Appellant, in turn, did not meet her burden of establishing that the childrens' current placement is not the least detrimental available alternative. Moreover, this court concurs with the trial court's finding that appellant, "minimizes Cheri Jones problems and minimizes the special needs of each of the children . . . she grossly underestimates the time and attention and care these five children require." The home study conducted by the Licking County Department of Human Services in January of 1998, states that a psychological examination of appellant in 1997 concluded that appellant "can become extremely rigid, suspicious and egocentric when she has over controlled anger and agitation for a lengthy period of time" and that appellant could benefit from "counseling and parenting skills training to learn to express feelings on a more timely basis . . .". The trial court placed "great weight" on such home study, which had excluded appellant as a potential caregiver for the five children in January of 1998. Thus, contrary to appellant's assertion, based on the foregoing, there is no evidence that the trial court's decision was aimed at punishing appellant for loving Cheri and/or for Cheri's conduct or that the trial court prejudged appellant's case. In its May 20, 1999, Decision, the trial court specifically stated as follows: "All parties and witnesses agree that the petitioner loves the children and the Court so finds. However, the petitioner readily admits that she loves her daughter, Cheri, and intends to stand by her and assist her. This is admirable. However in terms of this Court evaluating what is in the best interests of these five children, the mother's best interests and the grandmother's best interests are irrelevant. The Court finds that for the children to have future contact with their biological mother (and theoretically, their fathers) would be detrimental to their welfare and best interests. These children are young, ranging from age three to age ten. They deserve to have a mother and a father who will provide consistent nurturing as well as love and affection. They have a right to be free from the chaos and confusion which would certainly arise were they to be placed with the petitioner who intends to allow her drug addicted daughter to be a part of their young lives. The children have been in foster care two months shy of two years. They deserve the permanency of a stable, nurturing and consistent adoptive home and nothing less. Virginia Jones cannot provide such an environment or such a home."
We find that there was ample competent, credible evidence in the record supporting the trial court's holding that appellant is not suitably qualified to adopt the children and that it was not in their best interest for her to do so. The trial court, therefore, did not abuse its discretion in denying appellant's adoption petitions since such decision was not arbitrary, unreasonable or unconscionable.
Appellant's second assignment of error is overruled. The Judgment of the Licking County Court of Common Pleas, Probate Division, is affirmed.
By Edwards, J. Wise, P.J. and Hoffman, J. concurs