[Cite as *In re J.M.P.*, 2017-Ohio-8126.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

IN THE MATTER OF:                    :

    J.M.P.,                              :     Case No. 16CA702

 

                                    :

                       DECISION AND JUDGMENT ENTRY

                                    :

                                    :

APPEARANCES:

Anne S. Rubin, William H. Fraser, and Douglas L. Rogers, Athens, Ohio, for Appellant.

Anthony Moraleja, Waverly, Ohio, for Appellee.

Judith B. Goldstein, Columbus, Ohio, for Amici Curiae Family and Youth Law Center at Capital University Law School and the National Coalition for a Civil Right to Counsel.

CIVIL CASE FROM COMMON PLEAS COURT, PROBATE DIVISION
DATE JOURNALIZED: 9-29-17

Abele, J.

{¶ 1} This is an appeal from a Vinton County Common Pleas Court, Probate Division, decision that denied a request to appoint counsel for B.L.G., respondent below and appellant herein, in the adoption proceeding involving appellant's biological child. Appellant raises the following assignments of error:

> FIRST ASSIGNMENT OF ERROR:
>
> "A FATHER HAS A CONSTITUTIONALLY PROTECTED INTEREST IN COMPANIONSHIP, CARE, CUSTODY AND NURTURE OF HIS CHILD AGAINST THE POWER OF THE STATE IN ADOPTION PROCEEDINGS."

SECOND ASSIGNMENT OF ERROR:

"THE EQUAL PROTECTION CLAUSES REQUIRE OHIO PROBATE COURTS TO APPOINT COUNSEL FOR INDIGENT PARENTS IN ADOPTION PROCEEDINGS, SINCE OHIO STATUTES REQUIRE THE APPOINTMENT OF COUNSEL FOR INDIGENT PARENTS IN JUVENILE COURT PROCEEDINGS."

THIRD ASSIGNMENT OF ERROR:

"UNDER THE U.S. AND OHIO CONSTITUTIONS, DUE PROCESS REQUIRES THE PROBATE COURT IN AN ADOPTION PROCEEDING TO FOLLOW THE BALANCING TEST IN MATHEWS AND CODY AND, IN THIS CASE, APPOINT COUNSEL."

FOURTH ASSIGNMENT OF ERROR:

"PROBATE COURTS IN OHIO HAVE THE AUTHORITY TO APPOINT COUNSEL FOR INDIGENT PARENTS."

{¶ 2} On May 17, 2016, S.C.P. filed a petition to adopt his stepchild. The petition alleged that appellant's consent is not required because he failed without justifiable cause to provide more than de minimis contact with the child for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in S.C.P.'s home. Appellant filed a pro se objection to the petition.

{¶ 3} Appellant subsequently requested the trial court to appoint counsel to represent him. Appellant asserted that he "need[s] an attorney to help me present defenses and to protect my Constitutional right to have an on-going parent/child relationship with my [child]." On

August 31, 2016, the court denied his motion.   This appeal followed.[1]

I

{¶ 4}   Initially, we observe that appellant's thoroughly researched and well-written brief unfortunately does not designate proper assignments of error.   His "assignments of error" do not assign any error to the trial court's ruling.  *See* Painter and Dennis, Ohio Appellate Practice (2007 Ed.), Section 1.45 (stating that "the assignments of error * * * set forth the rulings of the trial court * * * contended to be erroneous"); *see also* App. R. Rule 16 (1992 staff notes) (setting forth an example of a proper assignment of error as, "The trial court erred in overruling defendant-appellant's motion for directed verdict. (Tr. _____)").   Instead, appellant framed his assignments of error as propositions of law.   While a proposition of law is appropriate in an appellate brief to the Ohio Supreme Court, an "assignment of error" is appropriate in an appellate brief to an Ohio appellate court.  *See State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶63 (O'Donnell, J., dissenting) (noting that "appellate courts consider assignments of error, while [the supreme] court considers propositions of law).   The two are materially and substantively different"); App.R. 16(A)(3); S.Ct. R.P. 6(B)(1).   Because appellant does not raise appropriate assignments of error, we would be within our discretion to simply disregard his arguments.  *Headings v. Ranco, Inc.*, 3rd Dist. Union No. 14–04–33, 2005–Ohio–1095, ¶6 (explaining that appellate court may disregard argument improperly presented as proposition of law); *State v. Maxson*, 66 Ohio App.3d 32, 36, 583 N.E.2d 402 (1st Dist. 1990) (declining to address an appellant's alleged error "[b]ecause the assignment is advanced as a proposition of

---

[1]  In *In re J.B.B.*, 4th Dist. Scioto No. 09CA3335 (Mar. 2, 2010), we entered an order concluding that a trial court's decision to deny a parent's request to appoint counsel in an adoption proceeding constitutes a final, appealable order.

law rather than as an assignment of error, [and] it does not comply with the Appellate Rules"); *see also Eberhard Architects, L.L.C. v. Schottenstein, Zox & Dunn Co., L.P.A.*, 8th Dist. Cuyahoga No. 102088, 2015-Ohio-2519, 2015 WL 3899367, ¶16 (stating that appellate court need not address argument if appellant fails to present it as an assignment of error in accordance with appellate rules).  An appellate court may, however, "reach the merits of an argument if the assignments of error [are] 'readily discernable' from the propositions of law, and where the opposing party ha[s] responded as if the propositions were assignments of error." *Eberhard Architects* at ¶16, citing *JPMorgan Chase Bank, N.A. v. Allton*, 10th Dist. Franklin No. 14AP–228, 2014–Ohio–3742, ¶6–7; *Carter–Jones Lumber Co v. Denune*, 132 Ohio App.3d 430, 432, 725 N.W.2d 330 (10th Dist. 1999).

{¶ 5}  In the case at bar, we readily discern that appellant's improperly-framed assignments of error challenge the trial court's decision to deny his request for appointed counsel.  Furthermore, appellee has responded to appellant's challenge as if he presented properly-framed assignments of error.  We will, therefore, consider the "assignments of error" to the extent that they relate to the trial court's alleged error in denying appellant's request for appointed counsel.

II

{¶ 6}  Appellant's "assignments of error" essentially assert that the trial court erred as a matter of law by denying his request for appointed counsel.  Appellant claims that the court's failure to appoint counsel to represent him in the adoption proceeding involving his biological child violates both the equal protection and due process clauses of the United States and Ohio constitutions.

A

{¶ 7} We first point out that during the trial court proceedings, appellant did not specifically raise any of the arguments he now raises on appeal. Instead, his motion generally alleged that he is indigent and that the trial court must appoint counsel in order to protect his constitutional right to maintain the parent-child relationship. While we recognize that appellant attached as an exhibit to his motion a Franklin County probate court decision that touches on the constitutional issues, appellant did not expressly argue the constitutional issues in his motion. Thus, although appellant generally referenced the constitutional arguments that might be made, he did not argue them and explain how they apply to his case. Under these circumstances, we believe appellant forfeited the right to raise the arguments he now raises for the first time on appeal. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶30 (stating that "an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶21 (explaining that defendant forfeited his constitutional challenge by failing to raise it during trial court proceedings); *Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724 N.E.2d 787 (2000) (concluding that party waived constitutional arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (explaining that an appellant cannot "present * * * new arguments for the first time on appeal"); *accord State ex rel. Jeffers v. Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, 2016 WL 7230928, fn.3 (stating that "[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the

argument for purposes of appeal"); *State v. Anderson*, 4th Dist. Washington No. 15CA28, 2016-Ohio-2704, 2016 WL 1643247, ¶24 (explaining that "constitutional arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal"). We may, however, consider appellant's arguments using a plain-error analysis. *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 42 N.E.3d 718, 2015–Ohio–3731, 42 N.E.3d 718, ¶27 (stating that reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133–34, 679 N.E.2d 1109 (1997), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus (stating that "[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it'"); *State v. Pyles*, 7th Dist. Mahoning No. 13–MA–22, 2015–Ohio–5594, ¶82, quoting *State v. Jones*, 7th Dist. No. 06–MA–109, 2008–Ohio–1541, ¶65 (explaining that the plain error doctrine "'is a wholly discretionary doctrine'"); *DeVan v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 102945, 2015–Ohio–4279, ¶9 (noting that appellate court retains discretion to consider forfeited argument).

{¶ 8}  For the plain error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, ¶22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001,

1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Barnes*, 94 Ohio St.3d at 27; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶14.

{¶ 9} The plain error doctrine is not, however, readily invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d at 122; *accord Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004–Ohio–5719, 816 N.E.2d 1049, ¶43. Moreover, appellate courts "'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.'" *Risner* at ¶28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; *accord Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.").

{¶ 10} In the case sub judice, we do not believe that the trial court plainly erred by failing to appoint counsel for appellant. Most pertinently, as we explain below, we do not believe that any error that the court may have arguably made by failing to appoint counsel constitutes a "plain" or "obvious" error under current law.

B

{¶ 11} "The right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 164, 492 N.E.2d 140 (1986), citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *accord Lassiter v. Durham Cty. Dept. of Social Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (explaining that "a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest"); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶28 (stating that "[t]he right to parent one's children is a fundamental right"). Indeed, "the upbringing of children [is] among [the] associational rights th[e United States Supreme] Court has ranked as 'of basic importance in our society.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 116–17, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), quoting *Boddie v. Connecticut*, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (citations omitted); *accord In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, 2014 WL 5285371, ¶17, citing *M.L.B.*, 519 U.S. at 116 ("A parent's relationship with his or her child is among the 'associational rights' sheltered by the Fourteenth Amendment to the United States Constitution against unwarranted usurpation, disregard, or disrespect by the state."); *Lehr v. Robertson*, 463 U.S. 248, 257–58, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), quoting *Prince v.*

*Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed.2d 645 (1944) ("'[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'"). "'[T]he interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment.'" *M.L.B.*, 519 U.S. at 119, quoting *Santosky*, 455 U.S. at 774 (Rehnquist, J., dissenting). Consequently, the parent-child relationship "'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" *Lassiter*, 452 U.S. at 27, quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *M.L.B.*, 519 U.S. at 116 (stating that the parent-child relationship deserves "shelter[] * * * against the State's unwarranted usurpation, disregard, or disrespect").[2]

{¶ 12} "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B.*, 519 U.S. at 119, quoting *Santosky*, 455 U.S. at 787 (Rehnquist, J., dissenting). "[P]arental status termination is 'irretrievabl[y] destructi[ve]' of the most fundamental family relationship" and permanently destroys "'all legal recognition of the parental relationship.'" *Id.* at 121, 127–28 quoting *Santosky*, 455 U.S. at 753, and *Rivera*, 483 U.S. at 580 107 S.Ct., at 3005. Thus, "'state intervention to terminate [a parent-child] relationship * * *

---

[2] For purposes of this appeal only, we assume, without deciding, that a private adoption proceeding in probate court constitutes state action. *See M.L.B.*, 519 U.S. at 116 and fn.8 (considering case as "involving the State's authority to sever permanently a parent-child bond" and noting that "[a]lthough the termination proceeding in this case was initiated by private parties as a prelude to an adoption petition, rather than by a state agency, the challenged state action remains essentially the same: M.L.B. resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationships"); *State ex rel. Portage Cty. Welfare Dept. v. Summers*, 38 Ohio St.2d 144, 151, 311 N.E.2d 6 (1974) (holding "that adoption is a function which requires the exercise of the judicial power which is constitutionally vested in the courts of this state"); *see also State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 591-592, 639 N.E.2d 1189 (1994) (concluding that state-action requirement satisfied in case involving private placement adoption agency, which performed "traditional governmental function").

must be accomplished by procedures meeting the requisites of the Due Process Clause.'" *Lehr*, 463 U.S. at 258, quoting *Santosky*, 455 U.S. at 752; *accord In re Adoption of Zschach*, 75 Ohio St.3d 648, 653, 665 N.E.2d 1070 (1996) (recognizing that adoption procedures, which terminate a parent's fundamental right, must comply with due process); *In re Adoption of Greer*, 70 Ohio St.3d 293, 298, 638 N.E.2d 999 (1994) (determining that parent facing loss of parental rights through adoption entitled to adequate notice and an opportunity to be heard). Additionally, "decrees forever terminating parental rights [fall] in the category of cases in which the State may not 'bolt the door to equal justice.'" *M.L.B.*, 519 U.S. at 124, quoting *Griffin v. Illinois*, 351 U.S. 12, 24, 76 S.Ct. 585, 100 L.Ed.2d 891 (1956) (Frankfurter, J., concurring in judgment).

{¶ 13} Cases involving the permanent termination of an "undeniably important" parent-child bond "demand[] * * * close consideration." *Id.* at 116-117. Court thus should approach parental rights termination cases, which include adoption cases, "'mindful of the gravity' of the circumstances and the long-term impact on all the concerned parties." *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶6, quoting *M.L.B.*, 519 U.S. at 117; *see In re Adoption of Greer*, 70 Ohio St.3d 293, 298, 638 N.E.2d 999 (1994) (recognizing that adoption "terminates all parental rights of a natural parent").

{¶ 14} With these considerations in mind, we proceed to consider appellant's argument that he has a constitutional right to appointed counsel in the adoption proceeding involving his biological child.

C

{¶ 15} Appellant first asserts that denying him the right to appointed counsel in this adoption proceeding deprives him of the equal protection of the law. Appellant notes that R.C.

2151.352 affords appointed counsel to an indigent parent in an abuse, neglect, and dependency proceeding who faces parental rights termination, but that no similar provision affords appointed counsel to an indigent parent in an adoption proceeding, who also faces parental rights termination. Appellant claims that the differing treatment of similarly-situated indigent parents in cases involving the fundamental right to parent a child violates the Equal Protection Clauses of the United States and Ohio Constitutions. However, because appellant did not specifically request the trial court to consider the equal-protection implications of his request for appointed counsel, we must review appellant's equal-protection argument for plain error.

{¶ 16} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." "These two equal-protection provisions are functionally equivalent and require the same analysis." *State v. Aalim*, Slip Opinion, 2017-Ohio-2956, 2017 WL 2274997, ¶29, citing *Eppley v. Tri–Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶11.

{¶ 17} The basic meaning of "equal protection of the laws" is that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Lehr*, 463 U.S. at 265 ("The concept of equal justice under law requires the State to govern impartially."). "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶6. The equal-protection

provisions do not, however, "'deny to [the] State the power to treat different classes of persons in different ways.'" *Eisenstadt v. Baird*, 405 U.S. 438, 446–447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), quoting *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *accord State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, ¶12. Instead, the equal-protection provisions prohibit legislation that treats "similar groups differently based on criteria that are unrelated to the purpose of the law." *Noling* at ¶13, citing *Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Lehr*, 463 U.S. at 265 ("The sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.").

{¶ 18} "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440; *accord Noling* at ¶14. If, however, the classification involves either a suspect class or a fundamental right, it will be upheld only if the challenged classification is narrowly tailored to serve a compelling state interest. *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶13; *e.g., Regents of Univ. of California v. Bakke*, 438 U.S. 265, 357, 98 S.Ct. 2733, 2782, 57 L.Ed.2d 750 (1978); *see Aalim* at ¶31; *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶40 (recognizing parental rights as fundamental and employing strict scrutiny in substantive due process analysis).

> This standard of review places a heavy burden on the government to show that there is a compelling state interest for the regulation. *Brown v. Entertainment Merchants Assn.,* 564 U.S. [786], 131 S.Ct. 2729, 2738, 180 L.Ed.2d 708 (2011). The rule must also be shown to be "the least restrictive means among available, effective alternatives" of furthering that interest. *Reno v. Am. Civ. Liberties Union,* 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813, 120 S.Ct. 1878, 146

L.Ed.2d 865 (2000).

*In re Judicial Campaign Complaint Against O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, ¶20.

{¶ 19} In the case sub judice, we are unable to conclude that the trial court plainly erred by failing to determine that denying appellant appointed counsel in this adoption proceeding deprives appellant of the equal protection of the law. While we assume, arguendo, that the strict scrutiny standard applies, we do not find it plain or obvious that denying an indigent parent appointed counsel in an adoption proceeding deprives the parent of the equal protection of the law. Appellant has not cited any decisions from this court, the Ohio Supreme Court, or the United States Supreme Court holding that the different treatment among indigent parents in private adoption proceedings and in state-initiated parental rights termination proceedings violates equal protection principles. Any error that the trial court might have made, therefore, is not a plain or obvious error under current law.[3]

{¶ 20} Accordingly, based upon the foregoing reasons, we find appellant's equal protection argument without merit.

D

{¶ 21} Appellant next asserts that the trial court's decision to deny him the right to

---

[3] Although the state need not be made a party to the proceedings, we find it difficult to evaluate whether the state has a compelling state interest without allowing the state an opportunity to address the issue. *See Ruble v. Ream*, 4th Dist. Washington No. 03CA14, 2003-Ohio-5969, ¶15 (noting that Attorney General need not be notified of proceedings involving constitutionality of state law unless action originates as a declaratory judgment action under R.C. 2721.12, and thus, court has jurisdiction to consider constitutionality of state law initiated in ordinary civil action).

appointed counsel deprives him of due process of law.[4]

{¶ 22} The Due Process Clause contained in the Fourteenth Amendment to the United States Constitution states: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *." The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The two clauses provide equivalent due process protections. *State v. Aalim*, Slip Opinion, 2017-Ohio-2956, 2017 WL 2274997, ¶15; *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶11; *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544–545, 38 N.E.2d 70 (1941).

{¶ 23} "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "'[D]ue process' has never been, and perhaps can never be, precisely defined." *Lassiter*, 452 U.S. at 24. Instead, due process is "a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *Aalim* at ¶22, citing *Walters v. Natl.*

---

[4] Appellant does not raise a substantive due process argument. *See, e.g., State ex rel. Cincinnati Enquirer v. Craig*, 132 Ohio St.3d 68, 2012-Ohio-1999, 969 N.E.2d 243, 2012 WL 1648905, ¶ 14 (2012), quoting *Kallstrom v. Columbus*, 136 F.3d 1055, 1064 (6th Cir.1998) (explaining that "[w]here state action infringes upon a fundamental right, such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest.").

*Assn. of Radiation Survivors*, 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985).

"Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter*, 452 U.S. at 24–25; *accord Aalim* at ¶22; *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶17, citing *Santosky*, 455 U.S. at 753–754 ("In the context of termination of parental rights, due process requires that the state's procedural safeguards ensure that the termination proceeding is fundamentally fair."). "The fundamental requirement[s] of due process [are notice and] the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Eldridge*, 424 U.S. at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *B.C.* at ¶17.

{¶ 24} Determining what process is due and whether a parental rights termination proceeding is fundamentally fair generally requires courts to consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335; *accord Lassiter*, 452 U.S. at 27; *B.C.* at ¶18.

{¶ 25} An indigent person ordinarily does not have a due process right to appointed counsel in a civil case. *M.L.B.*, 519 U.S. at 119; *State ex rel. McQueen v. Cuyahoga Cty. Court of Common Pleas, Probate Division*, 135 Ohio St.3d 291, 2013-Ohio-65, 986 N.E.2d 925, ¶9; *State ex rel. Burnes v. Athens Cty. Clerk of Courts*, 83 Ohio St.3d 523, 524, 700 N.E.2d 1260

(1998) (stating that "unlike criminal litigation, there is no general right of counsel in civil litigation"); *State ex rel. Jenkins v. Stern*, 33 Ohio St.3d 108, 110, 515 N.E.2d 928, 930–31 (1987).  Instead, an indigent Ohio citizen is entitled to appointed counsel in a civil case when counsel is statutorily- or constitutionally-mandated.  *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶13-15 and 19 (noting that juveniles have constitutional, due process right to counsel in delinquency proceedings–which are civil proceedings–as well as statutory right); *State ex rel. McQueen* at ¶9 and 19 (concluding that plain language of statute required appointed counsel), citing *State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 693 N.E.2d 794 (1998); *see Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, 28 (evaluating claimed due process right to counsel during purge hearing of contempt proceeding using *Eldridge* test).

{¶ 26} The United States Supreme Court has not recognized a federal due process right to appointed counsel for indigent parents in all parental rights termination proceedings. *Lassiter*, 452 U.S. at 31–32 (explaining that the United States Constitution does not require "the appointment of counsel in every parental termination proceeding").  In *Lassiter*, the Court initially noted that it generally recognized "an indigent's right to appointed counsel * * * only where the litigant may lose his physical liberty if he loses the litigation."  *Id.* at 25.  Thus, "as a litigant's interest in personal liberty diminishes, so does [the litigant's] right to appointed counsel."  *Id.* at 26.  The *Lassiter court* concluded an indigent litigant has a presumed "right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."  Id. at 26–27.

{¶ 27} The court declined to impose a constitutional requirement that requires appointed

counsel for an indigent parent in a parental rights termination proceeding and, instead, stated that trial courts must evaluate the facts and circumstances of each case in light of the three factors identified in *Eldridge*: "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Id.* at 27; *id.* at 31–32; *accord M.L.B.*, 519 U.S. at 117 (recognizing that *Lassiter* adopted a "case-by-case" approach that a trial court should evaluate in the first instance). Once the trial court balances the *Eldridge* factors, it then must weigh the net effect of those factors "against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." *Lassiter* at 27.

{¶ 28} The *Lassiter* court examined how the *Eldridge* factors generally applied to parental rights termination proceedings. In examining the private interest at stake, the court observed that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is * * * a commanding one." *Id.* The court determined that the state, which "has an urgent interest in the welfare of the child, * * * shares the parent's interest in an accurate and just decision." *Id.* The court thus found that "the State may share the indigent parent's interest in the availability of appointed counsel." *Id.* The court explained that "the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal." *Id.* at 28.

{¶ 29} The court concluded, however, that "[t]he State's interests * * * clearly diverge from the parent's insofar as the State wishes the termination decision to be made as economically as possible and thus wants to avoid both the expense of appointed counsel and the costs of the

lengthened proceedings his presence may cause." *Id.* The court nevertheless did not believe that the State's economic interest is "significant enough to overcome" the parent's private interest in maintaining the parent-child relationship.

{¶ 30} The court next examined "the risk that a parent will be erroneously deprived of his or her child because the parent is not represented by counsel." *Id.* The court reviewed the parental rights termination procedures involved in the matter and further noted that "the ultimate issues with which a termination hearing deals are not always simple, however commonplace they may be." *Id.* at 30. The court found that "the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high." *Id.* at 31.

{¶ 31} The *Lassiter* court did not, however, conclude that the balancing of the factors, weighed against the presumption that there is not a right to appointed counsel, shows that an indigent parent always has a due process right to counsel in all parental rights termination proceedings. Rather, the court explained:

> If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *[Mathews v.] Eldridge[,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)*]* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the *Eldridge* factors will not always be so distributed, and since "due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed," *Gagnon v. Scarpelli*, 411 U.S., at 788, 93 S.Ct., at 1762, neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon v. Scarpelli*, and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review. *See, e. g., Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220.

*Id.* at 31–32.

{¶ 32} The court further explained that because "'[t]he facts and circumstances * * * are susceptible of almost infinite variation,'" "'[i]t is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements.'" *Id.* at 32, quoting *Scarpelli*, 411 U.S. at 790. The court stated, however, that "[a] wise public policy" may be to provide indigent parents with appointed counsel in parental termination, as well as neglect and dependency, proceedings. *Id.* at 33-34.

{¶ 33} The *Lassiter* court ultimately held that the underlying facts and circumstances showed that the mother was not entitled to counsel in the proceeding to terminate her parental rights. The court observed that the mother showed little interest in rekindling a relationship with her child and that the presence of counsel would not have made a difference to the outcome of the proceedings. *Id.* at 32-33.

{¶ 34} A year prior to *Lassiter*, the Ohio Supreme Court held that the United States and Ohio Constitutions' due process and equal protection provisions require appointed counsel for indigent parents in state-initiated parental rights termination cases. *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 399 N.E.2d 66 (1980), paragraph two of the syllabus ("[i]n actions instituted by the state to force the permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that indigent parents be provided with counsel and a transcript at public expense for appeals as of right."); *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985),

citing *Heller* (recognizing earlier holding "that the state must appoint counsel for indigent parents at parental termination proceedings"). The court has not, however, specifically incorporated the same requirement in private adoption cases. In *In re Adoption of Zschach*, 75 Ohio St.3d 648, 653–54, 665 N.E.2d 1070 (1996), the court held that Ohio's adoption procedures requiring notice and an opportunity to be heard "adequately protect a [parent's] constitutionally protected right." The *Zschach* court did not mention that appointed counsel in an adoption proceeding involving an indigent parent is constitutionally required.

{¶ 35} This court previously rejected the notion that a constitutional right to counsel exists in private adoption proceedings. *In re Adoption of M.C.*, 4th Dist. Jackson Nos. 11CA5 and 11CA6, 2011-Ohio-6527, 2011 WL 6372834, ¶8-12. Other Ohio appellate courts have concluded likewise. *In re Adoption of I.M.M.,* 5th Dist. Ashland No. 16 COA 018, 2016–Ohio–5891, ¶17; *Angus v. Angus*, 10th Dist. Franklin Nos. 14AP-22 and 14AP-159, 2014-Ohio-4225, 2014 WL 4748485, ¶19 (stating that right to appointed counsel generally provided in juvenile and domestic court proceedings "when the state is the initiating and primary actor in a proceeding that will result in a termination of parental rights" and that "[t]here is no authority in Ohio for a right to counsel in a proceeding where the state is not the initiating entity and the parentage dispute merely reflects proceedings between individual parties"); *In re Adoption of Drake,* 12th Dist. No. CA2002–08–067, 2003–Ohio–510; *see In re Adoption of J.L.M-L.*, 5th Dist. Muskingum No. CT-2016-0030, 2017-Ohio-61, 2017 WL 90636, ¶12, appeal not allowed, 148 Ohio St.3d 1446, 2017-Ohio-1427, 72 N.E.3d 658 (refusing to recognize ineffective assistance of counsel claim in adoption context when no constitutional right to counsel in adoption proceedings).

{¶ 36} Additionally, appellant has not cited, and we are unaware of any, governing statute or rule that provides indigent parents with the right to appointed counsel in adoption proceedings between private parties. We recognize that R.C. 2151.352 allows for the appointment of counsel in most juvenile court proceedings. However, no similar statute authorizes the appointment of counsel in probate court proceedings, in general, or in adoption proceedings, in particular.[5]

{¶ 37} Therefore, based upon the current state of the law, we do not find it obvious that an indigent parent possesses a constitutional due process or statutory right to appointed counsel in every adoption proceeding. While application of the *Lassiter* factors might support a right to appointed counsel in some adoption proceedings, *Lassiter* made clear that trial courts should answer the question in the first instance based upon all of the facts and circumstances in the case. *Lassiter*, 452 U.S. at 31–32 (stating that "the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [should] be answered in the first instance by the trial court, subject, of course, to appellate review"); *accord M.L.B.*, 519 U.S. at 117 (recognizing that *Lassiter* adopted a "case-by-case" approach that a trial court should evaluate in the first instance).

{¶ 38} In the case at bar, appellant did not request the trial court to analyze appellant's right to counsel using the *Eldridge* balancing factors and did not present any argument how those

---

[5] According to long-standing law, "[e]xclusive jurisdiction over adoption proceedings is vested in the Probate Court." *In re Adoption of Biddle*, 168 Ohio St. 209, 152 N.E.2d 105 (1958); *accord State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.*, Slip Opinion, 2016-Ohio-7382, 2016 WL 6123595, ¶24; *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶9; *State ex rel. Portage Cty. Welfare Dept. v. Summers*, 38 Ohio St.2d 144, 149, 311 N.E.2d 6 (1974).

factors apply to his situation. We therefore are limited to reviewing whether the trial court plainly erred by not concluding that the *Eldridge* factors support a finding that due process requires appointed counsel in this case. After our review, we are unable to state that the trial court obviously erred by failing to conclude that the *Eldridge* factors support appellant's claim that he is entitled to appointed counsel. We again point out that in *Zschach*, the Ohio Supreme Court considered a parent's due process argument in the adoption context and did not find that appointed counsel was necessary to satisfy due process. Admittedly, the court did not explicitly discuss the right to appointed counsel, but the court did find that Ohio's existing adoption procedures comply with due process.

{¶ 39} Moreover, applying the *Eldridge* factors to this case does not obviously lead to a conclusion that due process requires appellant to have appointed counsel in this adoption proceeding. While we find it obvious that appellant has a strong fundamental interest at stake in the adoption proceeding, we do not find it obvious that appellant's interest outweighs the remaining factors so as to balance in favor of a right to appointed counsel. For example, it is not clear whether this adoption proceeding carries a high risk of error if appellant is not provided counsel. Unlike permanent custody cases, which the court considered in *Lassiter*, adoption cases may not be exceedingly complex, nor do they always involve expert medical or psychiatric testimony. *See Lassiter*, 452 U.S. at 30. Furthermore, parents involved in adoption proceedings may not be individuals "with little education, who have had uncommon difficulty in dealing with life," and who are in the same type of distressed situations as parents involved in state-initiated termination proceedings. *Id.* In the case at bar, it is not clear that the circumstances of the present adoption proceeding "may combine to overwhelm" appellant. *Id.*

Consequently, we are unable to conclude that the trial court plainly erred by failing to determine that the *Eldridge* factors balance in favor of appointing counsel for appellant.[6]

{¶ 40} As a final note, even if we agree with the principle that affording appointed counsel to an indigent parent in a private adoption proceeding is a "wise public policy," *see Lassiter*, 452 U.S. at 33, we are not a policy-making body. Instead, the Ohio General Assembly is the policy-making body in this state. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶212, quoting ("It is not this court's role to establish legislative policies"); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶21, quoting *State ex rel. Cincinnati Enquirer*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶21 (explaining that "[a] fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch is 'the ultimate arbiter of public policy'"); *see SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S.Ct. 954, 967, 197 L.Ed.2d 292 (2017) (stating that court "cannot overrule Congress's judgment based on [its] own policy views"). Thus, while we recognize appellant's and amici curiae's policy arguments, we are not willing to create a policy when it is not obviously constitutionally required under the Ohio or United States Constitutions. *Arbino* at ¶113 (stating that "the General Assembly is responsible for * * * making policy decisions; [courts] are charged with evaluating the constitutionality of their choices").

{¶ 41} We also fully recognize that the Ohio Supreme Court is free to interpret the Ohio constitution's due process provision so as to provide a right to appointed counsel in private

---

[6] We point out that nothing appears to prohibit the trial court from reconsidering appellant's request for appointed counsel at some future point in the proceedings, if later factual developments show that the *Eldridge* factors tilt in favor of appointing counsel.

adoption proceedings. We, however, do not believe that the current state of the law would support our decision to interpret the Ohio constitution in this manner.

{¶ 42} Accordingly, based upon the foregoing reasons, we do not believe that the trial court erred by failing to conclude that appellant possesses a due process right to appointed counsel.

{¶ 43} Consequently, we hereby overrule appellant's four "assignments of error" and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

Harsha, J., dissenting:

{¶ 44} I respectfully dissent from the majority decision, which affirms the trial court's judgment denying the biological father's right to counsel in this private adoption proceeding. I conclude we should exercise our discretion and address the merits of J.C.J.'s assignment of error without using the more restrictive plain-error standard of review. The Supreme Court of Ohio recently held in the context of an adoption case that " '[w]hen an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue.' " *In re Adoption of P.L.H.*, __ Ohio St.3d __, 2017-Ohio-5824, __ N.E.3d __, ¶ 22, quoting *Beveldere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993). "Stated another way, 'if we must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, we will do so.' " *Id.*, quoting *Belvedere*, 67 Ohio St.3d at 279.

{¶ 45} The issue of whether the trial court properly denied J.C.J.'s right to appointed counsel necessarily encompasses his claims on appeal that the right is constitutionally protected. J.C.J. raised his constitutional right to maintain his parent-child relationship in his motion for appointed counsel and attached a probate court decision and appellate brief from another case raising equal-protection and due-process issues. Under these circumstances he did not forfeit or waive his right to raise these constitutional issues on appeal, so the merits are properly before us. Consequently, we should not apply the stricter plain-error review here.

{¶ 46} J.C.J. raises constitutional equal-protection issues that are potentially meritorious. For example, *see generally* 2 Haralambie, *Handling Child Custody, Abuse and Adoption Cases*, Section 14:3 (2016), which states that "[b]ecause a contested adoption includes as a component a

termination of parental rights, a parent generally has a right to appointed counsel in a contested adoption where such a right is granted in termination cases in that state"; *see also In re Adoption of A.W.S.*, 339 P.3d 414, ¶ 27 (Mont.2014), and cases cited therein ("Courts that have considered the right to counsel for private termination proceedings on equal protection grounds have found that the right cannot be provided in state-initiated termination proceedings but denied in private terminations").   Likewise, courts have held that due process warrants the appointment of counsel in contested adoption cases.  *See, e.g., In re Adoption of J.E.V.*, 141 A.3d 254 (N.J.2016) (due process requires the appointment of counsel for indigent parents in a contested adoption).

{¶ 47} Here the trial court did not engage in the requisite balancing of interests required by *Eldridge,* 424 U.S.319, 96 S.Ct. 893, 47 L.Ed.2d 18 to resolve J.C.J's constitutional claims. Instead it appears to apply a blanket rule prohibiting the appointment of counsel in all contested private adoption cases.   Therefore we should sustain the assignment of error and vacate the judgment of the trial court with a remand for a full consideration of J.C.J.'s right to appointed counsel.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court, Probate Division, to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J.: Concurs in Judgment & Opinion
Harsha, J.: Dissents with Dissenting Opinion


For the Court




BY:_____
Peter B. Abele, Judge

## <u>NOTICE TO COUNSEL</u>

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.